[No. B014674. Second Dist., Div. Four. Jan. 28, 1986.]

DATATRONIC SYSTEMS CORPORATION, Plaintiff and Appellant, v. SPERON, INC., Defendant and Respondent.

**COUNSEL**

Louis A. Sackin & Associates and Louis A. Sackin for Plaintiff and Appellant.

Katz, Hoyt, Seigel & Kapor and Scott H. Jacobs for Defendant and Respondent.

**OPINION**

**ARGUELLES, P. J.**—This is an appeal from a judgment entered pursuant to settlement as authorized by Code of Civil Procedure section 664.6 (herein sometimes referred to as the section). Plaintiff and appellant Datatronic Systems Corporation (Datatronic) contests the validity of a settlement agreement purportedly entered with defendant and respondent Speron Inc., doing business as Addresses Unlimited (Speron), pursuant to litigation arising from a contract between the parties. We reverse the judgment.

FACTS

The instant action arises from a 1979 contract between the parties for computer equipment and other goods to be sold or leased by Datatronic to Speron and accounting, computer and related services to be performed by Datatronic for Speron. A dispute developed, and on November 10, 1983, Datatronic sued Speron for breach of contract; goods sold and delivered; work, labor and services; open book account; account stated; and quantum meruit. Speron answered and cross-complained against Datatronic and its president, Michael Milane (Milane).

On January 19, 1984, Datatronic took the deposition of Speron's vice-president. After several hours of examination on that date, the deposition was recessed and settlement negotiations commenced between the respective attorneys for Datatronic and Speron. Both attorneys then conferred privately with their clients. Afterward, in the presence of the parties, the attorney for Datatronic made a settlement offer of $3,200, which was accepted by Speron. The oral agreement was recorded by the court reporter present. Both parties stated on the record that they understood the terms of the agreement and agreed to be bound thereby.

The declarations made thereafter by Milane state that he was not informed of the settlement figure prior to his attorney's offer made in the presence of the other party, but was merely informed that his attorney had arranged what he considered to be the best settlement agreement to be hoped for. Milane has further contended that he "did not understand the terms, nature, scope or effect of the purported settlement agreement," and was pressured by his attorney who did not fully comprehend his position or the lack of merit of Speron's cross-complaint.

On February 1, 1984, counsel for Datatronic forwarded to counsel for Speron an unsigned written stipulation he had prepared, which substantially reiterated the terms of the settlement agreement set down by the court reporter at the January 19, 1984, deposition. Counsel for Speron responded

on February 8, 1984, by proposing modifications in the stipulation pertaining to warranties as to delivery of records and as to the payment of costs and attorney's fees.

By letter dated February 9, 1984, counsel for Datatronic accepted the suggested changes. On March 7, 1984, counsel for Speron enclosed the modified stipulation and a request for dismissal, both of which had been signed by his client, and the settlement check. After several months, when an executed version of the stipulation was not forthcoming, Speron's attorney made inquiry of counsel for Datatronic and negotiations over the exact terms of the settlement recommenced. Effective October 31, 1984, Datatronic's attorney withdrew as attorney of record, in part due to the fact that Datatronic's president, Milane, refused to sign the settlement agreement. Milane never executed any of the various versions of the written settlement agreements, either individually or as president of Datatronic.

On November 1, 1984, Speron filed a motion for judgment pursuant to terms of settlement under the section. After a continuance, judgment was granted on April 1, 1985; the court finding that on January 19, 1984, Speron, Datatronic and Milane had entered into a "settlement" within the meaning of the section. Datatronic filed a timely notice of appeal on May 29, 1985.

## CONTENTIONS

Datatronic contends: (1) it was an abuse of discretion to enter judgment pursuant to the settlement agreement because it was not a "valid and binding agreement"; (2) that judgment so entered was an abuse of discretion because the settlement was not "before the court"; and (3) that the policy favoring trial on the merits militates in favor of overturning this judgment. We do not consider the final contention, as the judgment must be reversed for failure to comply with the statutory prerequisites.

## DISCUSSION

■ Code of Civil Procedure section 664.6 provides: "If parties to pending litigation stipulate, in writing or orally before the court, for settlement of the case, or part thereof, the court, upon motion, may enter judgment pursuant to the terms of the settlement."

In *Corkland* v. *Boscoe* (1984) 156 Cal.App.3d 989, 991 [203 Cal.Rptr. 356], the court construed these requirements for stipulation as disjunctive, finding that "if parties to pending litigation stipulate *orally before the court or in writing* to a settlement of all or a part of the case," the trial court may

enter judgment pursuant to the terms of the settlement. (Italics added.) The court further stated that in acting upon a section 664.6 motion: "[T]he trial court must determine whether the parties entered into a valid and binding settlement of all or part of the case. In making this determination, trial judges . . . may receive oral testimony or may determine the motion upon declarations alone. [Citation.]" (*Id.*, at p. 994.)

We hold that the parties in the instant action stipulated neither orally before the court nor in writing within the meaning of the above-quoted code section, and thus, the judgment must be reversed.

It is undisputed that, at the January 19, 1984, deposition, the president of Datatronic, Milane, stated on the record in his deposition that he understood the terms of the settlement agreement and agreed to those terms. However, the agreement so recorded cannot be described as an oral stipulation "before the court."

Since Code of Civil Procedure section 664.6 is of such recent vintage, having taken effect on January 1, 1982, there is scant precedent to establish what acts would constitute an oral agreement "before the court." However, in the recent case of *Casa de Valley View Owner's Assn.* v. *Stevenson* (1985) 167 Cal.App.3d 1182, 1189 [213 Cal.Rptr. 790], this court upheld the enforcement of judgment where the parties to the pending litigation had orally stipulated to the terms of the settlement before the court in a judicially supervised settlement conference. The court noted that "[t]he public policy of this state supports pretrial settlement of lawsuits and enforcement of *judicially supervised settlements.* [Citation.] '. . . When the material terms of the settlement are agreed upon at the conference, the agreement must be enforced by the court.' [Citation.]" (*Id.*, at pp. 1190-1191, italics added.)

In another recent case *Gorman* v. *Holte* (1985) 164 Cal.App.3d 984 [211 Cal.Rptr. 34], the parties stipulated to the terms of the settlement on the record in open court. (*Id.*, at p. 987.) The court found that a valid settlement had thus been accomplished, noting that, "[o]ral agreements to compromise and settle lawsuits reached *at judicially supervised* settlement conferences are enforceable in a number of ways, including a motion pursuant to Code of Civil Procedure section 664.6 . . . ." (*Id.*, at p. 989, italics added.)

In *Corkland* v. *Boscoe, supra,* 156 Cal.App.3d at page 994, the court found that the section is applicable "not only to judicially supervised settlement conferences, but to stipulations of settlement in writing or orally before the court in pending litigation." The court did not expand on this description of the applicability of the section, but did discuss several cases decided prior to the enactment of this statute which generally held that the

former, nonstatutory motion to enforce a settlement agreement must be treated as a motion for summary judgment, to be denied where there is a disputed issue of material fact.

The *Corkland* court noted the reluctance of the earlier courts to grant judgment where the factual settings involved out-of-court negotiations, enforcement by a judge other than the one who presided over the settlement conference, or conditional settlements. It reiterated the language of its earlier decision in *Gopal* v. *Yoshikawa* (1983) 147 Cal.App.3d 128, 132 [195 Cal.Rptr. 36], which noted that "[t]he themes common to these criticisms of the enforcement procedures concern the extent of judicial supervision and disputes over whether an agreement was reached or, if so, its terms."

In *Gopal* v. *Yoshikawa, supra,* 147 Cal.App.3d at page 133, the reviewing court concluded that the trial court properly enforced the agreement of the parties where the entire matter was conducted on the record, and the terms of the settlement were explicitly defined before the trial judge in the presence of the parties and their attorneys, and both parties personally advised the court of their concurrence in the settlement.

By contrast, in *Nabi* v. *Laudermill* (1982) 130 Cal.App.3d 282, 283 [182 Cal.Rptr. 368], also decided prior to enactment of the section, the parties' respective counsel agreed in telephone conversations on a settlement figure. Plaintiff's counsel conferred with plaintiff and then advised defendant's counsel that the action was settled. Plaintiff then refused to sign the settlement documents and testified that he had never authorized the settlement. His attorney testified he had orally agreed to the settlement. The reviewing court reversed the order of judgment, noting the lack of judicial supervision. (*Id.*, at pp. 284-285.)

Although these and the other prestatute cases concerned themselves with a scrutiny of the record for any disputed issue of material fact as to the existence and validity of binding final agreements warranting reversal of a summary judgment, we note their reluctance to enforce a judgment in the absence of an oral agreement stated on the record at a settlement conference or some other judicially supervised proceeding.

This theme, which is reinforced by the several cases decided after the effective date of the statute in which oral stipulations made on the record at a judicially supervised settlement conference were upheld, compels us to conclude that an oral stipulation made before the court must be just that: a statement made on the record at a judicially supervised proceeding.

Although we note, as the court did in *Casa de Valley View Owner's Assn.* v. *Stevenson, supra,* 167 Cal.App.3d at page 1190, that the public policy

of this state supports pretrial settlement of lawsuits, we nevertheless believe that a procedural safeguard must be preserved in construing the section to require that oral stipulations be made at judicially supervised proceedings. Such a requirement would protect the interests of the parties to the agreement and ensure their full appreciation of the nature and finality of such settlement proceedings. We do not construe the January 19, 1984, deposition as a judicially supervised proceeding. Appellant was not "before the court" within the meaning of Code of Civil Procedure section 664.6.

Next, we find that there was no alternate written stipulation within the meaning of the section. In discussing the need for a writing, the court in *Duran* v. *Duran* (1983) 150 Cal.App.3d 176, 180 [197 Cal.Rptr. 497], stated: " 'It is a general rule . . . that, when it is a part of the understanding between the parties that the terms of their contract are to be reduced to writing and signed by the parties, the assent to its terms must be evidenced in the manner agreed upon or it does not become a binding or completed contract.' [Citations.]"

In the *Corkland* case, which in the interests of judicial economy employed the procedure authorized by section 664.6 to a prestatute case, the court upheld the entry of judgment where the parties filed a written stipulation with the court. (*Corkland* v. *Boscoe, supra,* 156 Cal.App.3d at p. 991.)

In the instant action, there is no such clear-cut conduct on the part of the parties. They first made oral statements at the deposition. Next, Datatronic's counsel sent to Speron a written version of the agreement containing substantially the same terms as those contained in the oral statements. This draft agreement contained spaces for the signatures of Milane, as president of Datatronic and as an individual, for Speron, and for their respective attorneys.

Counsel for Speron sent back a slightly modified version of the agreement, enclosing it in a cover letter which termed the stipulation a "proposed stipulation." This modified version was executed by Speron.

Milane refused to execute this modified version, or indeed, any version of the agreement. In his declaration, he stated his refusal was due to the fact that the documents did not contain the entire understanding of the parties.

Speron contends that the unsigned written stipulation and the exchange of correspondence between the attorneys, culminating in their agreement as to settlement terms, collectively constituted a "written stipulation" within the meaning of the section.

We reject this argument, finding that the series of renegotiated changes made to the draft of the stipulation, the seemingly continuous objections made as to its content, and the fact that it was at no time signed by Milane, establish that a binding final written stipulation did not exist as an alternative prerequisite to the application of Code of Civil Procedure section 664.6.

DISPOSITION

The judgment is reversed.

McClosky, J., and Luke, J.,* concurred.

---

*Assigned by the Chairperson of the Judicial Council.