[No. F006238. Fifth Dist. Feb. 9, 1987.]

CITY OF FRESNO, Plaintiff and Appellant, v.
CHARLES J. MAROOT, JR., et al., Defendants and Respondents.

COUNSEL

James A. McKelvey, City Attorney, Edwin A. Oeser, Assistant City Attorney, and Jesse J. Avila, Deputy City Attorney, for Plaintiff and Appellant.

Herman H. Fitzgerald for Defendants and Respondents.

OPINION

**BROWN, (G. A.), P. J.**—This is the second appeal in this eminent domain case. In the first appeal we reversed a summary judgment in favor of Charles J. Maroot, Jr., and Judith Ann Maroot (Maroot) enforcing a purported settlement agreement between the City of Fresno (City) and the landowners, Maroot. The nonpublished opinion is numbered F002200.

The purported settlement agreement provided for the payment by the City to the landowners, Maroot, of $315,000 for the damages suffered by Maroot by reason of the condemnation of their property, which included a restaurant known as Jon Jon's. A dispute developed concerning whether the sum provided to be paid included fixtures.

In the former appeal the ground for reversal of the summary judgment was that the trial court erred in refusing to consider certain declarations filed

by the parties concerning the disputed points. We also observed, "once the declarations are taken into consideration, as a matter of law they create issues of fact as to the meaning and intent of the parties which can only be resolved by a trier of fact." Since factual issues cannot be resolved in a motion for summary judgment, we reversed.

When the case went back to the superior court, Maroot moved for a judgment to enforce the settlement agreement pursuant to Code of Civil Procedure[1] section 664.6.[2] The motion was grounded upon the identical transcription of the agreement taken down by the certified shorthand reporter at the depositions of Charles J. Maroot, Jr., and Judith Ann Maroot and upon the same declarations that had been submitted as part of the previous summary judgment motion.

The section 664.6 motion was granted, and judgment was entered in favor of Maroot and against the City. The City's second appeal followed.

FACTS

As a step in preparation of the case the City set the depositions of Charles J. Maroot, Jr., and Judith Ann Maroot. Before commencement of the depositions, settlement negotiations were entered into between the City and Maroot through their respective attorneys, Mr. Bacigalupi and Mr. Fitzgerald. Following the negotiations, counsel attempted to memorialize the agreement by reciting the terms to a court reporter who was present for the scheduled depositions. The relevant portion of the proceedings reads as follows.:

"MR. FITZGERALD: The settlement on the Maroot Jr., parcel 13, would be the amount of three hundred and fifteen thousand dollars.

"MR. BACIGALUPI: That is three one five.

"MR. FITZGERALD: Three one five. Thank you. Together with all legal interest to which we would be entitled, to be calculated between the attorneys and agreed upon by the parties. But that is statutory and there should be no problem.

"We would also reserve all relocation claims on the move from the prop-

---

[1]All statutory references are to the Code of Civil Procedure unless otherwise indicated.

[2]Section 664.6 provides: "If parties to pending litigation stipulate, in writing or orally before the court, for settlement of the case, or part thereof, the court, upon motion, may enter judgment pursuant to the terms of the settlement."

erty which is being acquired. Would that be the agreed upon stipulation, Counsel?

"MR. BACIGALUPI: I would just say with respect to the relocation claims, the settlement doesn't affect any other relocation compensation to which Mr. Maroot might be entitled to under the law.

"MR. FITZGERALD: That is fine.

"MR. BACIGALUPI: We are not attempting to affect one way or the other any relocation claims.

"MR. FITZGERALD: Okay.

"MR. BACIGALUPI: And the stipulated three hundred and fifteen thousand dollars includes all compensation for land, improvements, fixtures, and any other mitigation claims and other damages other than relocation.

"MR. FITZGERALD: That is not fixtures, because that is part of our relocation argument.

"MR. BACIGALUPI: Well, whatever claims for relocation have existed before this agreement still exist. They are not affected.

"MR. FITZGERALD: So we are not involving fixtures, whatever that I [sic] term may mean. I think we are going to have a controversy on that, or at least a difference of opinion, because obviously there are certain items that John John [sic] wants to move, and that it was agreed to move before, and items that he hasn't agreed to—but that is a relocation claim. We are not dealing with the fixtures.

"MR. BACIGALUPI: All right.

". . . . . . . . . . . . . . . . . .

"MR. FITZGERALD: Mr. and Mrs. Maroot, are you agreeable to the stipulation that has been said?

"MRS. JUDITH MAROOT: Yes, but I just had a question on if it is necessary to define relocation.

"MR. FITZGERALD: Well, we really can't, because we are talking about—I think that relocation would involve a number of items, Judith. We are going

to—we very easily may disagree on the definitions, and I don't think we can reach an idea as to what relocation involves.

"It is our position that we are entitled to all relocation benefits that we are entitled to under the law. And I think Mr. Bacigalupi agrees with that, but he may disagree with how that is in [*sic*] interpreted.

"John John, do you have anything?

"MR. BACIGALUPI: Are the terms of the stipulation that you have heard agreeable?

"MR. CHARLES J. MAROOT, JR.: They are, except the costs of relocating, whatever they might be, are going to be holding me up from progressing any further, which I have been held up now I would say since the month of November of '81. I just hope we don't have to wait a whole year again to go around, because the money coming for relocation or whatever, it is going to take that to put the business back on its feet to get everything installed and get started again. And I can't go another year.

"MR. BACIGALUPI: Well, as far as relocation goes, of course you will be dealing with Daryl Balch, and those claims need to be submitted in the manner in which he instructs you. And then there will be a determination made as to the propriety or impropriety of the relocation claims. That is really a separate procedure. And if there are disagreements, there is a separate legal mechanism to resolve those disagreements which is not really involved here.

"MR. FITZGERALD: We are not involved, John John, at all in this settlement to include any and all of these claims that have been discussed before, but not submitted in writing to Daryl Balch, and all your relocation benefits. Whether they agree with them and we agree with them are preserved. And I hope you are right. I hope it doesn't take a year to get it done.

"MR. CHARLES J. MAROOT, JR.: Okay. . . ."

Subsequently, Mr. Bacigalupi mailed to Mr. Fitzgerald a written stipulation which he believed accurately represented the settlement. This stipulation stated in relevant part: "The total just compensation to be awarded herein, as full payment for the personal and real property so taken hereunder, together with any and all improvements thereon, and for all damages of every kind and nature suffered or to be suffered by reason of the taking of said property . . . is the sum of $315,000.00;

"`.`    .    .    .    .    .    .    .    .    .    .    .    .    "`.`    .    .    .    .    .    .

"Nothing herein is intended to otherwise affect the defendants' right to seek payment for relocation expenses for fixtures for which payment is not provided for herein. Fixtures shall not include those items referred to in defendants' settlement conference statement as personal property, inasmuch as payment is herein provided as to such items."

Maroot did not sign the stipulation.

The declarations filed by the respective parties indicate disagreement as to the provisions of the agreement, particularly as to whether the settlement included fixtures.

In granting Maroot's section 664.6 motion for judgment, the trial court stated: "The court having considered the declarations on file herein and the declaration of Deputy City Attorney Dale Bacigalupi interpreting the meaning of his stipulation at the deposition of September 27, 1982, the deposition stipulation, the pleadings herein and having examined the transcript of the 'Proceedings re Scheduled Deposition of CHARLES J. MAROOT, JR.' September 27, 1982, submitted in support of defendants' motion and the matter having been presented, argued and submitted, and the court being fully advised in the premises, and good cause appearing therefor,

"The court finds that upon the facts presented by the transcript and the declarations on file herein that a settlement was reached by the parties and recorded by a duly sworn and licensed court reporter and that the terms are clear and not subject to interpretation and that defendants Charles J. Maroot, Jr. and Judith Ann Maroot are entitled to judgment as a matter of law pursuant to Code of Civil Procedure Section 664.6."

### DISCUSSION

■ By its express terms, section 664.6 requires a stipulation in writing or orally before the court for settlement of the case. Since the stipulation in this case was not entered into before the court, the stipulation in writing provision governs. ■■■■ Therefore, determinative of the case is whether the unsigned stipulation entered at the time of the depositions and reduced to writing by a certified shorthand reporter satisfies the provisions of section 664.6.[3] We hold that the stipulation does not meet the requirements of section 664.6.

---

[3]Unlike a motion for summary judgment, if the requirements of section 664.6 are met the trial court is authorized to resolve remaining questions of disputed fact or interpretation.

*Datatronic Systems Corp.* v. *Speron, Inc.* (1986) 176 Cal.App.3d 1168 [222 Cal.Rptr. 658] involved a very similar situation and held that an unsigned court reporter's transcript of a settlement agreement taken at the time of a deposition does not satisfy the requirements of section 664.6.

In *Datatronic, supra,* a dispute developed between the parties to a contract for the sale and lease of computer equipment, and supplier Datatronic sued buyer Speron, alleging several causes of action. Shortly after commencement of the action Datatronic took the deposition of Speron's vice president. After several hours of examination, the deposition was recessed and settlement negotiations commenced between the attorney for Datatronic and the attorney for Speron. After negotiations between counsel, a conference was held with the parties. A settlement was orally agreed upon. The oral agreement was then recorded by the court reporter present for the deposition. Both parties stated on the record that they understood the terms of the agreement and agreed to be bound thereby. Thereafter, counsel for Datatronic forwarded to counsel for Speron an unsigned written stipulation which substantially reiterated the terms of the settlement agreement. Speron responded by proposing a modification which Datatronic accepted. Counsel for Speron then sent the modified stipulation, a request for dismissal, and the settlement check to Datatronic. After several months, when an executed version of the stipulation was not received, counsel for Speron contacted counsel for Datatronic and negotiations recommenced. Datatronic never executed any of the various versions of the settlement agreement. (*Id.,* at pp. 1170-1171.)

Speron filed a motion for judgment pursuant to the terms of the settlement agreement. (§ 664.6.) Judgment was granted, the trial court having found that on the date of the deposition and oral settlement Speron and Datatronic entered into a "settlement" within the meaning of section 664.6. The appellate court reversed, holding that "the parties . . . stipulated neither orally before the court nor in writing within the meaning of [§ 664.6] . . . ." (*Datatronic Systems Corp.* v. *Speron, Inc., supra,* 176 Cal.App.3d at p. 1172.) The court held that the oral stipulation to a settlement agreement before a court reporter who recorded the agreement following the taking of a deposition was insufficient to satisfy the requirement of section 664.6 that the agreement must be made "before the court." (*Id.,* at p. 1174.) The court reasoned that requiring an oral stipulation, made before the court or in a judicially supervised proceeding, "protect[s] the interests of the parties to the agree-

(*Fiore* v. *Alvord* (1985) 182 Cal.App.3d 561, 565 [221 Cal.Rptr. 400]; *Corkland* v. *Boscoe* (1984) 156 Cal.App.3d 989, 994 [203 Cal.Rptr. 356].) Thus, our holding in the former appeal that there is a disputed question of fact would have no effect upon determining the motion under section 664.6.

ment and ensure[s] their full appreciation of the nature and finality of such settlement proceedings." (*Id.,* at p. 1174.) Furthermore, the court refused to regard the recorded oral statement or the unsigned written versions of the agreement in exchanges of correspondence as a "binding final written stipulation" necessary to satisfy the alternative prerequisite to section 664.6, that the stipulation be "in writing." (*Id.,* at p. 1175.)

The similarities between *Datatronic, supra,* 176 Cal.App.3d 1168, and the instant case are compelling. Both cases involve an out-of-court settlement agreement recorded by a court reporter who was present for a deposition. The only distinction between the two cases is that in the instant case the written stipulation which counsel for the City sent to counsel for Maroot was never executed but was retained by counsel for Maroot, whereas in *Datatronic* a modification of the written stipulation was agreed to by Datatronic before Datatronic refused to execute the writing. In either case, no "written stipulation" came into being. The distinction is without significance.[4]

We find the reasoning in *Datatronic* sound. Only when the settlement agreement is stipulated in writing and *signed* by the parties or orally stipulated before the court can the interests of the parties to the agreement be protected and their full appreciation of the nature and finality of such settlement proceedings be ensured. Unless the agreement is judicially supervised or in writing and signed by the parties, the intent of the parties when they verbalized the settlement is vulnerable to conflicting interpretations and the summary procedure authorized by section 664.6 should not be available.

In summary, section 664.6 is an expedient and cost effective means of enforcing a settlement agreement. It is a valid alternative to a motion for summary judgment when a question of fact exists that can justly be resolved by a court sitting as a trier of fact based on the supporting papers filed with the motion. This means of enforcing a settlement, however, should only be utilized when the circumstances in which the settlement agreement was reached, or the record of the settlement, minimizes the possibility of conflicting interpretations. That is the rationale for requiring a written agreement entered into outside of court to be signed by the parties. That is not the situation before the court in this case.

Since we will reverse the judgment on the ground that the stipulation does not meet the requirements of section 664.6, we need not consider the other points urged by appellant.

---

[4]Contrary to Maroot's counsel's statement at oral argument, we find no indication in *Datatronic* that the oral recorded statement was subject to a condition subsequent that the understanding be reduced to a signed agreement.

The judgment is reversed.

Costs on appeal to the City.

Hamlin, J., and Ballantyne, J., concurred.

A petition for a rehearing was denied March 10, 1987.