[No. E004653. Fourth Dist., Div. Two. Oct. 20, 1988.]

ANTHONY GALLO, Plaintiff and Appellant, v.
FRANK WILLIAM GETZ, Defendant and Respondent.

[Opinion certified for partial publication.*]

*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of part II.

**COUNSEL**

Dale C. Miller for Plaintiff and Appellant.

Fidler & Bell and Stanley O. Orrock for Defendant and Respondent.

**OPINION**

**HEWS, J.**—In this case we are called upon to decide if a civil case for personal injury was settled by the parties. We have determined the require-

ments were met to support the trial court's decision that there was a compromised settlement between the parties and that the settlement was enforceable by defendant. We affirm the judgment dismissing plaintiff's complaint and compelling enforcement of settlement pursuant to Code of Civil Procedure section 664.6.[1]

## FACTS

An action for personal injury was filed by plaintiff on November 3, 1982. On February 19, 1985, the parties participated in a voluntary settlement conference. Settlement was not reached. Plaintiff's attorney and the defendant's insurer (insurer) continued to negotiate (defendant was represented by house counsel at the time) and on March 14, 1985, plaintiff's attorney wrote insurer stating: "Dear Ms. Rossell: "This is to confirm our telephone conversation of March 14, 1985, wherein the case of Anthony Gallo has been settled in full for the sum of $33,237.75, pursuant to the following terms:

"1.    Anthony Gallo is to receive up front the sum of $1,800.00, with $24,000.00 to follow, per Item #3.

"2.    $7,437.75 is also paid up front for attorney's fees and unpaid doctor bills.

"3.    Mr. Gallo is then to receive the sum of $2,000.00 payable on July 23, 1986, and continuing thereafter annually until July 23, 1997. This means that Mr. Gallo shall receive the total sum of $25,800.00 free and clear. ($24,000.00 + $1,800.00).

"    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .

"Please draw up the necessary paper work and checks as soon as possible. As per our understanding, you will prepare the settlement agreement in accordance with the above terms."

Pursuant to this letter on March 27, 1985, insurer prepared a settlement agreement, a release and two drafts in the amount of $8,237.75 and $1,000, respectively, (the front money) all of which was mailed to plaintiff's attorney. The draft in the amount of $8,237.75 made payable to plaintiff and his attorney was endorsed by plaintiff and deposited into the attorney's trust account in April of 1985. The draft in the amount of $1,000 made payable to plaintiff's former attorney in satisfaction of his lien fees for services rendered to plaintiff was endorsed and deposited in his bank in April 1985 as well. The drafts stated that they were in final settlement, not including the structured settlement, of plaintiff's claim for bodily injury arising from

---

[1] Unless otherwise indicated, all section references in this opinion are to the Code of Civil Procedure.

an accident on February 3, 1982. Plaintiff received and accepted a check written on his attorney's trust account in the amount of $1,800 and cashed this check. Amazingly, the attorney also disbursed funds to plaintiff's doctors and to himself from the trust account without first obtaining plaintiff's signature to the release and settlement agreements. Plaintiff never executed these documents.

Eight months later, on December 13, 1985, plaintiff advised his attorney that he was not willing to go along with the settlement. His attorney replied to plaintiff by letter on December 16, 1985, in which the December 13 telephone conversation was confirmed, and with this letter the attorney refunded $1,927.75 to plaintiff, the amount of that portion of attorney's fees that covered the structured portion of the settlement. This refund check was also cashed by plaintiff.

Plaintiff's attorney then notified insurer that the previously agreed upon settlement agreement was not acceptable to plaintiff. Thereafter on February 25, 1986, insurer informed plaintiff's attorney that the structured annuity settlement as agreed upon had been canceled. The record does not reflect if demand was made for the return of the $9,237.75 previously paid; however, it is clear that no money was ever returned to insurer.

Plaintiff's attorney substituted out of the case on February 19, 1986. Plaintiff then proceeded in propria persona status. On April 6, 1987, plaintiff substituted in his present attorney as attorney of record. On April 27, 1987, the present attorney made a "good faith" demand by letter to settle the case for $202,050.50.

The new attorney filed an at-issue memorandum and commenced discovery without objection by defendant's attorneys. Finally, on June 16, 1987, defendant filed a motion to compel and enforce the settlement. The motion was granted on August 17, 1987. In support of the motion, insurer stated that it was willing to reinstate the annuity and agreed to make every payment as set forth in the settlement agreement pursuant to the annuity. A draft of $4,000 (2 years of payment) was also tendered to and refused by plaintiff. In opposition to the motion, plaintiff stated he never felt the proposed settlement was adequate or why he should consent to a structured settlement. This appeal followed.

## DISCUSSION

Plaintiff does not dispute the existence of a settlement, nor does he contend that the March 14, 1985, letter signed by his attorney did not reflect all the terms of the settlement. Further, he does not contend insurer indulged in fraudulent behavior, that he was coerced into settlement, or that his attorney did not have authority to settle on the terms as set forth in this

letter. Plaintiff contends however that the requirements for a motion to compel enforcement of a settlement were not satisfied in that the settlement was not judicially supervised nor was any written stipulation signed by the parties. He further contends that defendant waived his right to compel enforcement of the settlement agreement by his conduct and undue delay in seeking enforcement.

I

SECTION 664.6 MOTION APPROVAL OF STIPULATION IN WRITING

In summarizing the facts, we conclude that plaintiff agreed to settle, accepted the initial benefits of the settlement and later determined that he had made an unfortunate deal. In our experience it is not at all unusual on the part of both parties to have second thoughts about a settlement.

However, under the statute, we must determine if there was a stipulation in writing to settle within the meaning of section 664.6.[2] ■ Defendant contends the letter from plaintiff's attorney to defendant's insurer of March 14, 1985, which confirmed the settlement agreement constitutes the writing contemplated by section 664.6. However, two recent decisions have held that implicit in the requirement for a stipulation in writing is the additional requirement that the writing be signed by the parties. (*Datatronic Systems Corp.* v. *Speron, Inc.* (1986) 176 Cal.App.3d 1168, 1175 [222 Cal.Rptr. 658]; *City of Fresno* v. *Maroot* (1987) 189 Cal.App.3d 755, 762 [234 Cal.Rptr. 353].) We agree with these decisions for the reasons set forth therein and inasmuch as the letter of March 14, 1985, was only signed by plaintiff's attorney, it does not meet the requirements of the section.

■ There is, however, another "writing" signed by the parties: the draft of March 27, 1985, issued by insurer payable to plaintiff and his attorney in the amount of $8,237.75. This draft was signed by Ms. Rossell, was drawn on the insurer's bank, and was endorsed by plaintiff and his attorney in final settlement of the claim. Although not signed by defendant, the draft set forth his name as an insured and it is clear that Ms. Rossell would not have issued the draft on his behalf without the requisite authority.

The unexecuted release and settlement agreement prepared by defendant for plaintiff's signature is not a part of the record before us. But it is clear to us that the requirement of a settlement agreement was for the sole purpose of spelling out the details of the annuity to be issued in order to carry out the terms contemplated by the deferred structured payment set forth in the

---

[2] Section 664.6 provides: "If parties to pending litigation stipulate, in writing or orally before the court, for settlement of the case, or part thereof, the court, upon motion, may enter judgment pursuant to the terms of the settlement."

attorney's earlier confirmation letter to the insurer. The release was undoubtedly a standard form general release in extinction of an obligation under Civil Code section 1541 and section 1542. Even though unsigned, plaintiff does not contend that either document in any manner varied by its terms the settlement contemplated by the parties.

We therefore hold that the draft, executed by the parties or their agents, met the requirements of the statute as a stipulation in writing signed by the parties. To hold otherwise would cause chaos in the settlement of personal injury claims. It is customary for insurers after the negotiation of settlements to forward drafts in payment and releases for execution together as a package to plaintiffs' attorneys. If plaintiffs' attorneys and their clients were allowed to take the money, refuse to execute the release, and later renege on the agreement to settle, no settlement would ever be final. If on the other hand, it became necessary for the insurer in practice to obtain a release signed by the plaintiff before issuance of a draft in payment, many settlements would not be reached as immediate payment is often the most important factor in reaching settlement in personal injury cases.

In this case a binding enforceable settlement agreement was entered into by the parties.

## II

### TERMINATION OF SETTLEMENT BY INSURER*

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

Judgment affirmed. Each party to bear own costs on appeal.

Campbell, P. J., and McDaniel, J., concurred.

A petition for a rehearing was denied November 14, 1988.

---

*See footnote, *ante,* page 329.