[No. A057672. First Dist., Div. Three. May 13, 1993.]

TERESA DIAZ, Plaintiff and Appellant, v.
IVAN A. MAY et al., Defendants and Respondents.

### COUNSEL

Robert W. Brower for Plaintiff and Appellant.

Craddick, Candland & Conti, D. Stuart Candland, Richard G. Logan, McNamara, Houston, Dodge, McClure & Ney, Thomas E. Pfalzer and R. Dewey Wheeler for Defendants and Respondents.

### OPINION

**WERDEGAR, J.**—Teresa Diaz brought suit for medical malpractice against Samuel Merritt Hospital (Hospital) and several physicians (Doctors). Diaz

appeals from a judgment entered pursuant to the terms of a settlement. (Code Civ. Proc., § 664.6.)[1] She contends section 664.6 was inapplicable because the written settlement on which the court based its judgment was signed only by Diaz's attorney (by his secretary), and not by Diaz personally. We conclude section 664.6 does not necessarily require the personal signature of the settling litigant and the court could properly find the written settlement was authorized by Diaz. We therefore affirm.

## FACTS AND PROCEDURAL BACKGROUND

Diaz's complaint for medical malpractice was filed April 11, 1985. In November of 1987, defendants moved for enforcement of a written stipulation of settlement. Counsel for Hospital and Doctors declared their clients had authorized them to settle for $15,000 each. Counsel for Doctors made this $30,000 offer by telephone to Diaz's then-attorney, Richard Katz, on July 2, 1987. Later the same day, Katz telephoned Doctors' attorney and said Diaz had authorized him to accept the $30,000 offer. Defense counsel then received the following letter dated July 6 and signed by Katz's secretary: "Gentlemen: [¶] This will confirm that the above case has been settled for $30,000.00 and we have so advised the Court. Please forward the settlement drafts and releases to us promptly. [¶] I enjoyed working with your offices. Thank you." The releases were sent, but never returned; Katz informed defendants' lawyers that Diaz refused to go through with the settlement.

In opposition to the motion to enforce settlement, Diaz declared she did not authorize Katz to settle the case for $30,000 or any other amount. She first learned of the purported settlement when she received the releases from Katz's office. Katz later told her defendants were willing to make larger future payments instead of the immediate $30,000. Diaz rejected these offers and fired Katz.

Judge John Sutter heard the motion on January 12, 1988. Katz testified he received the $30,000 offer by telephone. He communicated the offer to Diaz, who authorized him to accept it. He telephoned the acceptance to Doctors' attorney, then directed and authorized his secretary to send a confirming letter. Diaz later told Katz she had learned, after agreeing to the settlement, that it would adversely affect her Social Security benefits that had just been approved. For that reason, she no longer wanted the settlement.

By minute order of January 22, 1988, and signed order filed April 20, 1988 (the latter signed, apparently through clerical error, by Judge Sutter's

---

[1]All further statutory references are to the Code of Civil Procedure.

clerk, rather than the judge), Judge Sutter found the letter from Katz's office was a written stipulation for settlement within the meaning of section 664.6. He granted the motion to enforce settlement, but ordered several provisions not evidenced by the letter deleted from the releases. Judge Sutter did not enter judgment and did not explicitly order Diaz to dismiss her action.

More than a year later, on June 22, 1989, defendants moved to dismiss the action for delay in prosecution; in the alternative, they sought a contempt order against Diaz for her failure to consummate the settlement and dismiss the action. The court, by Judge Michael Ballachey, denied the motion "without prejudice to the rights of the defendants to bring a motion to enter a judgment consistent with the settlement, and to fund same." Judge Ballachey "suggest[ed]" defendants return to Judge Sutter from whom, assuming they were prepared to fund the settlement, they could obtain a final judgment of dismissal.

Defendants did not seek such a judgment from Judge Sutter. Instead, they again moved, on May 9, 1990, to dismiss the action for failure to prosecute. The court, by Judge Demetrios Agretelis, denied defendants' motion to dismiss. The court further ordered: (1) that Judge Sutter's 1988 order, signed only by his clerk, be vacated and a new order be prepared and submitted for his signature nunc pro tunc; and (2) that final judgment was entered pursuant to the settlement. Diaz appeals from this judgment.

### Discussion

■ Section 664.6 provides: "If parties to pending litigation stipulate, in writing or orally before the court, for settlement of the case, or part thereof, the court, upon motion, may enter judgment pursuant to the terms of the settlement." This statute, added in 1981, provides an expeditious alternative to amendment of the answer or a motion for summary judgment to enforce certain settlement agreements. (*Corkland* v. *Boscoe* (1984) 156 Cal.App.3d 989, 993-994 [203 Cal.Rptr. 356]; *City of Fresno* v. *Maroot* (1987) 189 Cal.App.3d 755, 762 [234 Cal.Rptr. 353].)

■ We are faced with a conflict in authority on the question whether "parties" in section 664.6 refers only to the individual litigants themselves or whether the oral or written stipulation may be by the parties' attorneys.

In *Haldeman* v. *Boise Cascade* (1985) 176 Cal.App.3d 230 [221 Cal.Rptr. 412] (hereafter *Haldeman*), counsel for all parties reached, at a judicially

supervised settlement conference, an oral on-the-record settlement stipulation. Haldeman was not personally present, but her attorney acted (the trial court later found) with her authority in agreeing to the settlement. (*Id.* at pp. 232-233.) Haldeman contended the settlement could not be enforced under section 664.6 because she had not personally stipulated to it before the court. The Court of Appeal disagreed: "Common sense and common practice indicate that the term 'party' should include the individual litigant or his attorney of record acting on his behalf. For example, under the statutory language of section 437c, 'Any party may move for summary judgment in any action or proceeding if it is contended that the action has no merit or that there is no defense thereto' and 'Notice of the motion and supporting papers shall be served on all other parties to the action at least 28 days before the time appointed for hearing.' Countless other examples of use of the terms 'party' or 'parties' appear in our statutes, and it is understood universally that the terms are intended to include the party litigant personally or through his attorney of record. 'It is settled that " 'We are required to give effect to statutes "according to the usual, ordinary import of the language employed in framing them." [Citation.]' " ' [Citation.] In enacting section 664.6, had the Legislature intended 'parties' to have a meaning other than this commonly understood meaning, it could and would have provided so in the statute. [Citations.]" (*Id.* at pp. 233-234.)

The court in *Gallo v. Getz* (1988) 205 Cal.App.3d 329 [252 Cal.Rptr. 193] (hereafter *Gallo*) took the opposite position. The plaintiff's attorney had sent the defendant's insurer a letter confirming the terms of a settlement reached orally with the insurer. Although the plaintiff did not personally sign the letter, he subsequently endorsed a settlement draft from the insurer. (*Id.* at pp. 331-332.) The appellate court ultimately held the signed draft was an adequate stipulation in writing to allow enforcement under section 664.6. (*Id.* at pp. 333-334.) The court first stated, however, that the letter confirming the settlement did not meet the requirements of the section because it was "only signed by plaintiff's attorney," not by plaintiff himself. (*Id.* at p. 333.)[2]

The statement in *Gallo*, arguably dictum, was followed in a holding on similar facts in *Nicholson v. Barab* (1991) 233 Cal.App.3d 1671 [285

---

[2]The *Gallo* court's reasoning appears inconsistent. The court stated an attorney's signature was insufficient, even though there was no claim the attorney acted without authority (205 Cal.App.3d at pp. 332-333), but went on to hold the signature of the defendant's *insurer* on the settlement draft could substitute for that of the defendant because "it is clear that [the insurer] would not have issued the draft on his behalf without the requisite authority." (*Id.* at p. 333.) The court did not explain why the signature of an insurer should satisfy the statute while that of an attorney of record does not.

Cal.Rptr. 441] (hereafter *Nicholson*). The plaintiff's attorney sent opposing counsel a letter memorializing a settlement reached, but not put on the record, at a judicially supervised conference. (*Id.* at pp. 1679-1680.) Citing *Gallo*, the Court of Appeal held the letter was not a written stipulation within the meaning of section 664.6 because it was "signed by plaintiff's attorney but not by plaintiff." (*Id.* at p. 1681.) The court went on to hold the statute of frauds barred enforcement of the settlement by other procedural means. (*Id.* at pp. 1681-1683.)

We agree with the *Haldeman* court that "parties" was intended to have the same meaning in section 664.6 as it generally has in civil procedure, i.e., that it includes the parties acting through their duly authorized attorneys of record. Neither *Gallo* nor *Nicholson* offers any rationale for the opposite view, and neither cites compelling authority. The *Nicholson* court cited only *Gallo*, which, in turn, cited two decisions, neither of which, as will be shown, squarely supports a literal interpretation of "parties."

In *City of Fresno* v. *Maroot, supra,* 189 Cal.App.3d 755, counsel memorialized an oral settlement by reciting the terms to a court reporter present for a deposition. Counsel for the city then sent counsel for Maroot a written stipulation setting out the terms. The opinion does not reveal whether counsel for the city signed the stipulation; it does state, however, that the stipulation was never executed by Maroot, but was retained by his attorney. (*Id.* at pp. 757-760, 762.) The Court of Appeal held Maroot could not enforce the settlement under section 664.6 because the transcript of the settlement produced by the court reporter was not signed by the parties and the written stipulation was unexecuted. (*Id.* at pp. 760-762.) The court did not discuss or decide whether the signatures of the attorneys, authorized by their clients to settle the case, would have met the requirements of section 664.6. The opinion thus fails to support *Gallo*'s statement that an attorney's authorized signature is insufficient.

The other case relied upon in *Gallo, Datatronic Systems Corp.* v. *Speron, Inc.* (1986) 176 Cal.App.3d 1168 [222 Cal.Rptr. 658] (hereafter *Datatronic*), is somewhat closer on point but also falls short of a broad holding that section 664.6 always requires the personal signatures of the litigants. In that case, an oral settlement agreement recorded by a court reporter present for a deposition was followed by an exchange of modified draft settlement agreements. The final version was accepted by both attorneys, but executed only by Speron. Although Datatronic's attorney had agreed by letter to Speron's proposed changes, Datatronic's president refused to sign the finalized stipulation. (*Id.* at pp. 1170-1171.)

The Court of Appeal held Speron could not enforce the settlement against Datatronic under section 664.6. The court noted that the draft agreement contained a space for the signature of Datatronic's president and quoted the rule that " ' "when it is a part of the understanding between the parties that the terms of their contract are to be reduced to writing and signed by the parties, the assent to its terms must be evidenced in the manner agreed upon or it does not become a binding or completed contract." [Citations.]' " (*Datatronic, supra,* 176 Cal.App.3d at p. 1174.) Rejecting Speron's claim that the exchange of correspondence and drafts between counsel collectively constituted a "written stipulation," the court concluded: "[T]he series of renegotiated changes made as to the draft of the stipulation, the seemingly continuous objections made to its content, and the fact that it was at no time signed by [Datatronic's president], establish that a binding final written stipulation did not exist as an alternative [to an oral stipulation] prerequisite to the application of Code of Civil Procedure section 664.6." (*Id.* at p. 1175.)

*Datatronic*'s holding did not rest on a broad rule requiring the personal signature of the litigant in every case. Rather, the court held the evidence did not establish the parties, personally *or* through their attorneys, had ever executed a document they intended to serve as a binding written stipulation. The question whether preliminary negotiations, written or oral, have resulted in a binding agreement, even though a formal writing to follow is envisioned, is one dependent on the intent of the parties as shown by the evidence in an individual case. (*Pacific Grove-Asilomar Operating Corp.* v. *County of Monterey* (1974) 43 Cal.App.3d 675, 686 [117 Cal.Rptr. 874]; see *Richardson* v. *Richardson* (1986) 180 Cal.App.3d 91, 97 [225 Cal.Rptr. 370] [oral stipulation before court enforceable under § 664.6 despite parties' subsequent failure to produce written agreement].) *Datatronic* does not suggest a court, under section 664.6, may not enforce a settlement agreement signed by the attorneys when the court finds, on substantial evidence, that the parties entered into what they regarded as a binding settlement.[3]

Diaz argued below section 664.6 could only be applied where there was "no disputed issue of authorization." Were this correct, i.e., were resolution of such factual issues as authorization forbidden under section 664.6, a flat rule requiring, in all cases, a writing personally signed by the litigants might make sense. This is because a settlement agreement signed only by the attorney is generally open to the claim it was unauthorized; the litigant

---

[3]Diaz does not contend the evidence was insufficient to support the trial court's implied finding the July 6 letter was intended as a binding stipulation to settlement. In response to the claim the letter was insufficiently definite in its terms to constitute a binding settlement, Judge Sutter ordered deleted from the releases all provisions that were not supported by the letter agreement.

opposing enforcement of settlement may easily create a factual issue as to the attorney's authority. (See *Bowden* v. *Green* (1982) 128 Cal.App.3d 65, 73 [180 Cal.Rptr. 90] [attorney requires specific authorization to compromise or settle litigation].)

■ The law, however, is well settled to the contrary. "Even where there are contentions of disputed facts . . . the Legislature has now approved the filing of the motion under section 664.6. . . . [¶] In acting upon a section 664.6 motion, the trial court must determine whether the parties entered into a valid and binding settlement of all or part of the case. In making this determination, trial judges, in the sound exercise of their discretion, may receive oral testimony or may determine the motion upon declarations alone." (*Corkland* v. *Boscoe, supra*, 156 Cal.App.3d at p. 994; accord, *Datatronic, supra*, 176 Cal.App.3d at p. 1172; *Malouf Bros.* v. *Dixon* (1991) 230 Cal.App.3d 280, 283-284 [281 Cal.Rptr. 235].) "Inherent in this power to determine if a binding settlement agreement has been reached is the power to determine whether the attorney had authority to settle the case on behalf of his client." (*Haldeman, supra*, 176 Cal.App.3d at p. 234; see also *City of Fresno* v. *Maroot, supra*, 189 Cal.App.3d at p. 762 [§ 664.6 appropriate remedy "when a question of fact exists that can justly be resolved by a court sitting as a trier of fact based on the supporting papers filed with the motion."].)

■ In the present case, the trial court impliedly determined, on substantial evidence, that Katz was specifically authorized to settle Diaz's case for $30,000. Katz's declaration and oral testimony, together with the letter of July 6, 1987, were sufficient to show Diaz authorized Katz to settle and Katz's secretary acted as his agent in signing and sending the July 6 letter. Katz testified he directed the secretary to send the letter and he "would have signed the letter" had he been in the office.

Because we hold the court did not err in applying section 664.6, we need not consider defendants' alternative contention that Diaz's appeal is barred by laches because she did not appeal Judge Sutter's 1988 order enforcing the settlement. In any event, the contention lacks merit. Judge Sutter did not render judgment. It was defendants' responsibility to obtain, if necessary for enforcement, a final judgment in their favor based on Judge Sutter's order. They failed to do so, even after an explicit suggestion to this effect by Judge Ballachey. The long delay in this case is at least equally defendants' fault.

## Disposition

The judgment of the superior court is affirmed.

White, P. J., and Merrill, J., concurred.