[No. C017620. Third Dist. Oct. 11, 1995.]

WILLIAM JOHNSON, Plaintiff and Appellant, v.
DEPARTMENT OF CORRECTIONS et al., Defendants and Respondents.

**COUNSEL**

Abraham N. Goldman and Jonathan E. Finegold for Plaintiff and Appellant.

Littler, Mendelson, Fastiff, Tichy & Mathiason, Victor J. James II, Richard R. Gray and Robert A. Zeman for Defendants and Respondents.

**OPINION**

**SPARKS, Acting P. J.**—At the time of the proceedings at issue in this appeal, Code of Civil Procedure section 664.6 provided: "If parties to pending litigation stipulate, in writing or orally before the court, for settlement of the case, or part thereof, the court, upon motion, may enter judgment pursuant to the terms of the settlement." (Stats. 1981, ch. 904, § 2, p. 3437.) (All subsequent statutory references are to the Code of Civil Procedure unless otherwise indicated, and all further references to section 664.6 are to this version of the statute.)[1] In the recent case of *Levy* v. *Superior Court* (1995) 10 Cal.4th 578 [41 Cal.Rptr.2d 878, 896 P.2d 171] (*Levy*), a case

---

[1] In 1993, the Legislature amended section 664.6 to require that an oral stipulation before the court be made "on the record." (Stats. 1993, ch. 768, § 1.) This amendment, which became

involving a written settlement agreement, the California Supreme Court held that the term "parties" as used in section 664.6 means the litigants personally and not their attorneys of record. We conclude the same definition must be applied in cases involving oral settlement agreements. In this case, the plaintiff did not personally agree to the oral settlement of his case by his attorney. Accordingly, we shall reverse the judgment entered pursuant to section 664.6.

### FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff William Johnson, an African American, was an employee of defendant Department of Corrections. In January 1993, plaintiff filed a second amended complaint alleging 10 causes of action, including racial discrimination, violation of constitutional and statutory civil rights, violation of the "whistle-blower" protection statute (Lab. Code, § 1102.5), misrepresentation (Lab. Code, § 970), fraud, and emotional distress.[2]

The trial court granted summary adjudication in favor of defendants on these last four causes of action, ruling plaintiff had not complied with governmental claim filing requirements.

Trial on the remaining causes of action began October 18, 1993, before Judge Richard K. Park. The parties spent the first few days on motions *in limine* and jury selection while simultaneously engaging in settlement negotiations under Judge Park's supervision. On Thursday, October 21, a jury was selected and was told to report back to the courtroom on Monday, October 25 to be sworn in. On Friday, October 22, the attorneys continued their negotiations with Judge Park by telephone and reached an agreement.

On Monday, October 25, the parties convened in court without the jury. Judge Park noted: "Record should reflect that on Friday afternoon the court negotiated a settlement between counsel, the terms of which were that the defendant would pay to the plaintiff the sum of $83,000 and in return for which the plaintiff would dismiss this lawsuit with prejudice, execute a standard form release of all claims, resign his position with the Department of Corrections, and agree that as part of the settlement it would remain confidential. [¶] I have now been informed that [plaintiff] has changed his mind about resigning his position with the Department of Corrections."

effective January 1, 1994 (Cal. Const., art. IV, § 8, subd. (c)(1)) was short lived. A subsequent 1994 amendment deleted the phrase "on the record." (Stats. 1994, ch. 587, § 7.)

[2]Other named defendants included the State Personnel Board, the Department of Personnel Administration and various officials and employees of the Department of Corrections, including Nadim Khoury and John O'Shaughnessy. The only defendants involved in this appeal are the Department of Corrections, Khoury and O'Shaughnessy.

Plaintiff's counsel, John Whitfield, confirmed that was plaintiff's position and also confirmed the court had correctly outlined the terms of the settlement that had been negotiated the previous Friday afternoon. In reviewing the settlement negotiations, Whitfield added that when he related plaintiff's concern about continuing medical insurance coverage, Judge Park had confirmed with defendant that plaintiff would be eligible for coverage under the Consolidated Omnibus Budget Reconciliation Act of 1985 (COBRA) (42 U.S.C. § 300bb-1 et seq.). In response to another concern, the court verified with defendant that a resignation from the department would have no effect on plaintiff's plan to take medical retirement as recommended by his physicians,[3] in that retirement was a matter to be worked out between plaintiff and the Public Employee's Retirement System, not plaintiff and defendant.

The court asked plaintiff if he had changed his mind about the settlement agreement. Plaintiff responded that it had never been his intent to resign his position and that he had been "emphatically clear" on that point.

The court replied: "We negotiated for about two and a half days towards settling this case and covered a lot of territory. [¶] And it was always assumed and explicitly discussed in all of our negotiations [plaintiff] would be resigning his position from the Department of Corrections." Judge Park continued: "[Resignation] was a given at all times. [¶] So this is absolute news to me."

In response to the court's questioning, Whitfield stated he had been authorized by plaintiff to enter into the settlement agreement on the terms previously outlined by the court.

Defense counsel added that he had "absolutely no question" that a settlement agreement had been reached on Friday afternoon and as part of that agreement, plaintiff had agreed to resign. He then stated that since plaintiff was now refusing to perform under the terms of that agreement, he was moving for enforcement of the settlement agreement under section 664.6.

The court ruled that plaintiff's attorney was authorized to enter into the settlement agreement and in fact entered the agreement on behalf of plaintiff. The court granted the motion to enforce the settlement on the terms the court had set forth on the record. The court then called in the jury, informed them the case had settled, and excused them.

On November 15, 1993, judgment was entered on the terms outlined in the settlement agreement. Plaintiff was awarded $83,000 and the action was

---

[3]Plaintiff was apparently then receiving workers' compensation benefits.

dismissed with prejudice as to all defendants. In addition, plaintiff was to resign his position at the Department of Corrections, and release all defendants from all claims he had then or might have in the future "which are or may be in any manner related or in any manner incidental to Plaintiff's employment with the Department of Corrections." The judgment specified the word "claims" included "all charges, actions, claims, complaints and grievances, whether actual or potential, known or unknown, arising out of Plaintiff's employment with the Department of Corrections," including potential claims under "the National Labor Relations Act, Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act of 1967 . . . the California Fair Employment and Housing Act, Labor Code section 1102.5" and other statutes.

Plaintiff moved for a new trial and/or relief under section 473, contending he had never agreed to this settlement, never agreed to resign from employment, and never agreed to give up other claims. In addition to asserting the settlement was unauthorized, plaintiff also claimed section 664.6 was violated because there was no settlement that had been reached in open court and placed on the record.

In opposition, defendants disputed each of these points. Defendants asserted an agreement reached over the telephone and communicated to a judge in the course of a judicially supervised settlement negotiation was an oral stipulation before the court within the meaning of section 664.6.

The trial court denied plaintiff's motions, noting that after reconsideration, the court once again found "that it is more probable that . . . Whitfield had the authority to settle and did settle the terms later placed on record and that during the intervening weekend plaintiff changed his mind. [¶] Defendants properly invoked . . . [s]ection 664.6 to enforce the settlement. All of the negotiations on the terms of the settlement, except the final setting of the amount, had occurred face to face between counsel and the Court. The amount finally agreed upon was settled between the Court and counsel over the phone, but that term of the settlement was still judicially supervised."

This appeal by plaintiff followed.

## DISCUSSION

In his opening brief on appeal, plaintiff argued (1) the settlement agreement did not meet the statutory prerequisites entitling defendants to enforcement because the agreement had not been made before the court on the record, (2) defendants' motion to enforce the settlement agreement under section 664.6 was not properly noticed, (3) he had not authorized Whitfield to enter into the settlement agreement, and (4) the release of federal claims was invalid.

While plaintiff's appeal was pending, the California Supreme Court decided *Levy, supra*, 10 Cal.4th 578. In response to our request for supplemental briefing, plaintiff now urges *Levy* compels reversal of the judgment because he never personally voiced his acceptance of the settlement agreement to the court. We agree.

In *Levy*, the parties' attorneys signed a five-page letter outlining the terms of a settlement. When one of the litigants refused to sign the formal settlement agreement, the other moved for enforcement under section 664.6. (10 Cal.4th at pp. 580-581.) The trial court noted that the Courts of Appeal were divided on the question of whether a settlement agreement signed by a party's attorney but not by the party personally was enforceable under this statute. The court elected to follow cases holding that the signature of an attorney alone was insufficient to create a binding settlement agreement for purposes of section 664.6. (10 Cal.4th at p. 581.)

A petition for writ of mandate was denied in the appellate court. The Supreme Court issued an alternative writ in order to resolve the conflict among the Courts of Appeal. (*Levy, supra*, 10 Cal.4th at p. 581.) The high court noted that section 664.6 specified that the "*parties* to pending litigation" must have stipulated "in writing or orally before the court, for settlement of the case, . . ." The sole question before the court was "whether the term 'parties' literally means the litigants personally or whether it also includes the litigants' attorneys of record." (10 Cal.4th at p. 581.)

The court reviewed several decisions of the Courts of Appeal. (*Levy, supra*, 10 Cal.4th at pp. 581-582.) In *Haldeman* v. *Boise Cascade* (1985) 176 Cal.App.3d 230 [221 Cal.Rptr. 412], a case involving an oral settlement agreement by attorneys for the parties, the court enforced the agreement, noting the term "party" was generally understood in provisions of the Code of Civil Procedure to include the litigant's attorney of record. (*Id.* at pp. 233-234.) In *Diaz* v. *May* (1993) 15 Cal.App.4th 1268 [19 Cal.Rptr.2d 409], a case involving a written settlement, the court reached the same conclusion, noting the term "parties" includes "parties acting through their duly authorized attorneys of record." (*Id.* at p. 1273.)

Taking an opposing view, the courts in *Gallo* v. *Getz* (1988) 205 Cal.App.3d 329, 333 [252 Cal.Rptr. 193], and *Nicholson* v. *Barab* (1991) 233 Cal.App.3d 1671, 1681 [285 Cal.Rptr. 441], concluded that a stipulation to settle must be signed personally by the litigants and not solely by their attorneys.

The Supreme Court turned to the intent of the Legislature in determining which meaning of the term "parties" should prevail. (*Levy, supra*, 10 Cal.4th

at pp. 582-583.) The court noted: "Section 664.6 governs the entry of judgment pursuant to the terms of a settlement agreement. Unlike the steps an attorney may take on behalf of the client that are incidental to the management of a lawsuit, such as making or opposing motions, seeking continuances, or conducting discovery, the settlement of a lawsuit is not incidental to the management of the lawsuit; it ends the lawsuit. Accordingly, settlement is such a serious step that it requires the client's knowledge and express consent." (*Id.* at p. 583.)

The Supreme Court continued: "In this case, the agreement to settle was signed only by the attorneys for the litigants, rather than the parties themselves. Because the settlement of a lawsuit is a decision to end the litigation, it obviously implicates a substantial right of the litigants themselves. Given this circumstance and section 664.6's focus on settlements, we conclude that in providing for an enforcement mechanism for settlements by 'parties,' the Legislature intended the term to literally mean the litigants personally." (*Levy, supra,* 10 Cal.4th at p. 584.)

The Supreme Court observed that section 664.6 "created a summary, expedited procedure to enforce settlement agreements when certain requirements that decrease the likelihood of misunderstandings are met. Thus the statute requires the 'parties' to stipulate in writing or orally before the court that they have settled the case. The litigants' direct participation tends to ensure that the settlement is the result of their mature reflection and deliberate assent. This protects the parties against hasty and improvident settlement agreements by impressing upon them the seriousness and finality of the decision to settle, and minimizes the possibility of conflicting interpretations of the settlement. [Citations.] It also protects parties from impairment of their substantial rights without their knowledge and consent." (*Levy, supra,* 10 Cal.4th at p. 585, fn. omitted.)

The high court concluded: "[T]he term 'parties' as used in section 664.6 ('If parties to pending litigation stipulate . . . for settlement of the case . . .') means the litigants themselves, and does not include their attorneys of record." (*Levy, supra,* 10 Cal.4th at p. 586.) Thus, because the litigant in the case before the *Levy* court had not signed the settlement agreement, the agreement was not enforceable under section 664.6.[4] (10 Cal.4th at p. 586.)

We are compelled to draw the same conclusion here. Settlement negotiations were handled by the parties' attorneys and the court. While the

---

[4]However, the court noted that alternative means of enforcement, such as a motion for summary judgment, a separate suit in equity, or an amendment to the pleadings, may exist. (10 Cal.4th at p. 586, fn. 5.)

attorneys orally agreed to the settlement during judicially supervised negotiations, and thus orally stipulated to the agreement "before the court" (*In re Marriage of Assemi* (1994) 7 Cal.4th 896, 906 [30 Cal.Rptr.2d 265, 872 P.2d 1190] (*Assemi*); *Richardson* v. *Richardson* (1986) 180 Cal.App.3d 91, 97 [225 Cal.Rptr. 370]), plaintiff never personally informed the court that he accepted the terms of this agreement. Absent this personal involvement, the agreement is not enforceable under section 664.6.

■ Defendants assert that because *Levy* involved a written settlement agreement and the instant case involves an oral agreement, the Supreme Court's pronouncements may not apply. We disagree. The issue before the *Levy* court was the proper interpretation of the term "parties" as used in section 664.6. That section applies to both written and oral settlement agreements. To hold that "parties" means the litigants in the case of written settlement agreements, but litigants *or* their attorneys in the case of oral agreements, would create unnecessary confusion and thwart legislative intent. The Supreme Court noted that section 664.6 creates certain requirements that "decrease the likelihood of misunderstandings." The "litigants' direct participation," that is, their personal stipulation before the court, protects "against hasty and improvident settlement agreements" and ensures that the settlement is the result of "mature reflection and deliberate assent." (*Levy, supra,* 10 Cal.4th at p. 585.) Requiring the litigants themselves to stipulate to a settlement agreement "impress[es] upon them the seriousness and finality of the decision to settle, and minimizes the possibility of conflicting interpretations of the settlement." (*Ibid.*) This reasoning applies to all settlement agreements, whether written or oral.[5]

■ Defendants contend that plaintiff was sufficiently involved in the settlement negotiations that his attorney's verbal acceptance of the agreement should be sufficient to permit enforcement under section 664.6. In support of this claim, defendants cite *Assemi, supra,* 7 Cal.4th 896, a case they assert survives *Levy.*

In *Assemi,* a settlement was reached before judicial arbitration proceedings began. The appointed arbiter, a retired judge, listened as the attorneys recited the terms of the settlement. Counsel responded affirmatively when the judge asked if they agreed with the stipulation. The judge then asked each litigant

---

[5]We note that obtaining a litigant's oral stipulation before the court is no more burdensome or difficult than obtaining a litigant's signature for a written agreement. Section 664.6, as interpreted by *Levy,* simply requires litigants to personally inform the court that they agree to the settlement. If settlement is reached over the telephone in a judicially supervised settlement negotiation, as happened here, litigants could presumably meet the statute's requirements by informing the supervising judge of their agreement via a conference call or other telephonic communication.

individually if they understood and agreed to the terms as recited on the record. They, too, responded affirmatively. (7 Cal.4th at p. 902.) When one of the parties later balked at the agreement, the other sought enforcement under section 664.6. (7 Cal.4th at pp. 903-904.)

The primary issue before the Supreme Court was whether a stipulation made before a retired judge acting in a quasi-judicial capacity constituted a stipulation "before the court." (*Assemi, supra,* 7 Cal.4th at p. 906.) The court ruled that it was. (*Id.* at p. 910.) In reviewing the relevant case law, the Supreme Court noted: "It is undisputed that a stipulated settlement presented orally by the party litigants *or their counsel* to a judge, in the course of a settlement conference supervised by that judge, satisfies the 'before the court' requirement of section 664.6." (*Id.* at p. 906, italics added.)

In a footnote, the *Levy* court observed that this statement in *Assemi* "must be read in the context of requiring direct party-litigant participation in the settlement." (10 Cal.4th at pp. 585-586, fn. 3.)

Defendants assert "direct party-litigant participation" was involved here. We disagree. Consultation between plaintiff and his attorney during the course of negotiations does not constitute the type of direct participation contemplated by *Levy.* As *Levy* makes clear, the litigant must personally acknowledge the settlement to the court. Indeed, even in *Assemi,* the court asked the litigants whether they understood and agreed to the settlement outlined by their attorneys. (7 Cal.4th at p. 902.) No such direct party-litigant participation occurred here.

Finally, defendants assert that the rule in *Levy* should not be applied retroactively to this case. Again, we disagree.

■ "In determining whether a decision should be given retroactive effect, the California courts undertake first a threshold inquiry, inquiring whether the decision established new standards or a new rule of law. If it does not establish a new rule or standards, but only elucidates and enforces prior law, no question of retroactivity arises. [Citations.] Neither is there any issue of retroactivity when we resolve a conflict between lower court decisions, or address an issue not previously presented to the courts. In all such cases the ordinary assumption of retrospective operation [citations] takes full effect." (*Donaldson* v. *Superior Court* (1983) 35 Cal.3d 24, 36-37 [196 Cal.Rptr. 704, 672 P.2d 110].)

■ In *Levy,* the Supreme Court expressly stated it was resolving the issue of defining the term "party" for purposes of section 664.6 because of

conflicting interpretations in the lower courts. (10 Cal.4th at p. 581.) The fact that most of these cases involved written stipulations is irrelevant; indeed, we are unaware of any case suggesting that different rules applied for written and oral agreements.[6] Because *Levy* resolved a conflict between lower court decisions, retrospective application is proper.

Defendants assert that equity weighs against retrospective application because they have already tendered $83,000 to plaintiff as called for in the settlement agreement. However, the record indicates that plaintiff refused to accept this money. Whitfield, plaintiff's attorney, sought a court order authorizing him to negotiate the check on behalf of plaintiff, deduct fees in the amount of $30,104.226, and place the remaining proceeds in a client trust account. The court entered an order authorizing Whitfield to negotiate and endorse plaintiff's name to the settlement draft on plaintiff's behalf "due to [plaintiff's] refusal to cooperate." However, the court did not permit Whitfield to withdraw his fees. Instead, the court ordered that Whitfield was "authorized to deposit said settlement check into his client's trust account, until the dispute between [plaintiff] and Attorney Whitfield is resolved through arbitration, or otherwise."

The record is devoid of any evidence that this dispute was resolved, and the money paid by defendants presumably remains in plaintiff's client trust account. Since these funds can be returned to defendants, defendants will not be harmed in any way by the retroactive application of *Levy*.

### DISPOSITION

The judgment is reversed. Plaintiff is awarded his costs on appeal.

Davis, J., and Brown, J., concurred.

---

[6]We note again that even in *Assemi* itself, the litigants personally told the judge that they accepted the terms of the settlement agreement. (7 Cal.4th at p. 902.)