[No. B075702. Second Dist., Div. Four. Apr. 9, 1996.]

MIGUEL ENRIQUE CORTEZ et al., Plaintiffs and Respondents, v. SHARON KENNEALLY, Defendant and Appellant.

## COUNSEL

Weissburg & Aronson, Foley, Lardner, Weissburg & Aronson, J. Mark Waxman and Thomas A. Bolan for Defendant and Appellant.

Schuler & Kessel, Jack M. Schuler and Naomi Scheck for Plaintiffs and Respondents.

## OPINION

## VOGEL (C. S.), P. J.

### INTRODUCTION

Purportedly pursuant to Code of Civil Procedure section 664.6,[1] the trial court made orders enforcing against defendant and appellant Sharon Kenneally a previous settlement agreement of a medical malpractice action

---

[1]All further statutory references are to the Code of Civil Procedure.

brought by plaintiffs and respondents Miguel Cortez and Graciela de Cortez and the estate of Liliana Cortez, involving alleged malpractice of appellant's husband, Leo F. Kenneally, M.D. The orders must be reversed, because appellant did not personally participate in the settlement agreement or personally agree to be obligated by it. Under *Levy* v. *Superior Court* (1995) 10 Cal.4th 578 [41 Cal.Rptr.2d 878, 896 P.2d 171], the section 664.6 procedure can be used only against a party who personally agreed to the settlement.

## FACTUAL AND PROCEDURAL BACKGROUND

On September 18, 1987, respondents filed a medical malpractice/wrongful death lawsuit against Leo F. Kenneally, M.D., Leo F. Kenneally, M.D., Inc., a professional corporation, Her Medical Clinic, Mediken Management Corporation, and Does 1 through 100. The complaint alleged that on September 20, 1986, decedent Liliana Cortez, while undergoing a therapeutic abortion by Dr. Kenneally, suffered cardiac arrest and died shortly thereafter as a proximate result of negligent treatment.

At some point appellant Sharon Kenneally was added as a defendant. She is Dr. Kenneally's wife and the chief operating officer of Mediken Management, Inc., which she describes as a management company which pays bills and collects receivables for Dr. Kenneally and other doctors.

Attorney Alan R. Freedman represented Dr. Kenneally, Her Medical Clinic, Mediken Management Corporation, and appellant Sharon Kenneally. Attorney Jack M. Schuler represented respondents. A settlement agreement was negotiated and stated on the record before the court on March 22, 1990. Respondents and Dr. Kenneally and their attorneys were present; appellant was not. Attorney Freedman represented that "this settlement goes to all the clients that we are representing [namely] Leo M. [*sic*] Kenneally, individually, MD, doing business as the Her Medical Clinic, Mediken Management Corporation, and Sharon Kenneally." The terms of the settlement were "a payment by Dr. Kenneally and the entities associated with him in the amount of $65,000 . . . plus payments in the future of $725 per month for a grand total of 15 years. . . . The payments in the future will be secured by an adequate security interest in satisfactory real estate or some comparable security." The defendants had until May 15, 1990, to present respondents with adequate security acceptable to their attorney; in the absence of agreement on security, the parties were to come back to court on May 15. As matters turned out, there never was agreement on security.

On March 23, 1990, a written settlement agreement, drafted by respondents' attorney was executed, superseding the agreement stated in court. It

recited that it was entered between Miguel Cortez and Graciela de Cortez, Her Medical Clinic, Leo F. Kenneally, M.D., Leo F. Kenneally, M.D., Inc., Mediken Management Corporation, and Sharon Kenneally. It recited that "Defendants" agreed to make payments of $65,000 on or before April 15, 1990, and $725 per month for 180 months commencing May 15, 1990, and "Payment of said future obligations to be secured by assets selected by defendants and mutually agreed to by the parties to this agreement or their attorneys, said selection and agreement to be concluded on or before May 15, 1990." It recited that plaintiffs released defendants of all claims. It was signed by respondents Miguel Cortez and Graciela de Cortez, by respondents' attorney Schuler, and by Leo F. Kenneally, M.D., above a caption "Leo F. Kenneally, M.D., On Behalf of Defendants." Appellant did not personally sign the written settlement agreement. No other spaces or lines were provided for other defendants to sign.

According to appellant's declaration in opposition to enforcement of the settlement agreement against her, the first she ever heard of security being provided for the debts in the settlement agreement was *after* the March 22, 1990, hearing. She had no role in settlement discussions and was not present at the hearing. She did not authorize either Dr. Kenneally or Attorney Freedman to offer anything on her behalf. According to the declaration of Attorney Freedman in opposition to enforcement of the judgment against appellant, his understanding of the agreement was that Dr. Kenneally and Her Medical Clinic were to pay the settlement, and that respondents would release appellant and Mediken Management Corporation, who had no liability because neither was a medical provider in any way responsible for decedent's injury. Freedman stated, "My concern was that any settlement that was reached should act as a release for all the defendants not just Leo Kenneally and the Her Medical Clinic. My statement [on the record concerning the settlement going to all the defendants] was to insure that plaintiffs would not come back in the future claiming that they still had a claim against Sharon Kenneally and Mediken Management Corporation, who were to be dismissed with prejudice." In Dr. Kenneally's declaration in opposition to enforcement against appellant, he stated, "I did not authorize, nor was I able to authorize, anyone to act on behalf of my wife, Sharon Kenneally, or for Mediken Management, Inc."

Without any evidence specifically contradicting these declarations of appellant's nonparticipation in the settlement agreement and the lack of authority of Dr. Kenneally or Attorney Freedman to bind appellant to the obligations of the agreement, the trial court nevertheless found appellant was bound by the settlement agreement. Respondents' contention in this regard, in their "Reply Brief in Support of Motion for Entry and Enforcement of

Judgment" filed November 5, 1991, was simply that "It can only be assumed that Mr. Freedman [was acting as counsel for] all of the Defendants in this action and therefore [was] authorized to bind all of the Defendants in this action to this judgment." In its minute order of November 22, 1991, the court found, without explanation, that appellant and Mediken Management Corporation were bound by the judgment. The court's reasoning may be reflected in its comments at a subsequent hearing, November 5, 1992, that "I have no doubt that the words that were expressed at the conference and in open court on the record, as reflected in the transcript, fairly and objectively indicate that Dr. Kenneally and Mr. Freedman were acting on Mrs. Kenneally's behalf as well as Dr. Kenneally's behalf, as well as Her Medical Clinic and the corporation, and that I am sure I believed at the time that record was clear that Mr. Freedman and Dr. Kenneally were both acting on Mrs. Kenneally's behalf . . . . The settlement agreement does say 'defendants will pay.' . . . [¶] . . . [I]t's inconceivable she didn't know about the substance of it and consider herself to provide security under it."

In light of our legal conclusion that the settlement agreement cannot be enforced against appellant because she did not personally agree to it, we need not recite in detail the complex subsequent developments leading up to the judgment. It suffices to note the following. Upon learning of the settlement agreement appellant did make an offer to provide certain real property she owned as security for the future payments. Respondents' attorney Schuler delayed determining whether the offered property was adequate security, did not appear in or appeal to the court when the May 15, 1990, deadline for agreement on security passed, and never reached agreement on security. Not having heard of any agreement that her real property be used as security, appellant divested herself of title to her property in April 1991 by placing it in the L.K.S.K. Family Trust as an estate planning device. Eleven monthly payments of $725 were made to respondents between August 1990 and June 1991. The checks were signed by appellant on the account of Mediken Management, Inc. Then in June 1991, Leo F. Kenneally, M.D., doing business as Her Medical Clinic, filed a petition in bankruptcy. In October 1991 the bankruptcy court discharged the debtor of all dischargeable debts. The monthly payments to respondents ceased. When respondents demanded that appellant make the payments, noting that appellant did not have a discharge in bankruptcy as to her obligations, appellant refused on the ground she was not obligated under the settlement agreement.

In October 1991 respondents filed their motion pursuant to section 664.6 to compel appellant to comply with the settlement agreement. In particular, respondents sought an order for the court clerk to execute a trust deed on the real property which appellant had earlier offered as security. Appellant

opposed the motion on grounds that she never agreed to be bound by the settlement and had in the meantime disposed of the property. The court in November 1991 found that appellant was bound by the agreement and gave respondents an election to specify the security. Respondents elected a different piece of property, which had also been deeded by appellant to the L.K.S.K. Family Trust. Various proceedings followed, involving disputes over service of process and jurisdiction over the trust which was the title-holder, and the authority of the court to set aside the transfer, as well as renewal of the dispute whether appellant was obligated under the settlement agreement. In November 1992 the court ruled that the settlement agreement "is enforceable [against appellant] for the amount of the settlement and enforc[e]able only against the real estate and not her personally. Further the Court impressed a lien on the real estate to secure the judgment." In March 1993, as modified in April 1993, the court entered the judgment from which appellant appeals. It provides: appellant Sharon Kenneally and Mediken Management Corporation are bound by the March 22, 1990, settlement agreement with the same force as a court judgment; respondents shall recover from appellant the sum of $81,738 (representing the present value of future payments due under the settlement agreement) plus interest; the real property in question is security for this judgment; appellant continues to have beneficial and de facto control of the property held by the L.K.S.K. Family Trust; appellant's quitclaim deed of the property to the trust was without consideration and may be disregarded in equity; the property is still available to support the remaining scheduled payments; this judgment shall be executed only against real property owned or controlled by appellant including the property held in the trust; and this judgment shall be secured by filing an abstract of judgment thereby creating a judgment lien on real property owned or controlled by appellant.[2]

## DISCUSSION

At the time of the settlement in March 1990, section 664.6 provided, "If *parties* to pending litigation stipulate, in writing or orally before the court, for settlement of the case, or part thereof, the court, upon motion, may enter judgment pursuant to the terms of the settlement." (Stats. 1981, ch. 904, § 2, p. 3437, italics added.) In *Levy* v. *Superior Court, supra,* 10 Cal.4th 578, the Supreme Court held that the reference in this statute to "parties" means the litigants themselves. To be enforceable under section 664.6, the settlement agreement must have been *personally* agreed to or signed by the litigant; an agreement entered only by the litigant's attorney on behalf of the

---

[2]Appellant also appeals from the court's subsequent order denying appellant's motions to strike respondents' cost memorandum and to tax costs. In light of our reversal of the underlying judgment, those orders must also be reversed.

litigant is insufficient. (10 Cal.4th at pp. 584, 586.) The Supreme Court reasoned that "[u]nlike the steps an attorney may take on behalf of the client that are incidental to the management of a lawsuit, . . . the settlement of a lawsuit is not incidental to the management of the lawsuit; it ends the lawsuit. Accordingly, settlement is such a serious step that it requires the client's knowledge and express consent." (*Id.* at p. 583.) "The litigants' direct participation tends to ensure that the settlement is the result of their mature reflection and deliberate assent. This protects the parties against hasty and improvident settlement agreements by impressing upon them the seriousness and finality of the decision to settle, and minimizes the possibility of conflicting interpretations of the settlement. . . . It also protects parties from impairment of their substantial rights without their knowledge and consent. . . ." (*Id.* at p. 585, internal citations omitted.) The court held that because the client in that case did not personally sign the settlement agreement (it was signed only by his attorney on his behalf), the agreement was not enforceable under section 664.6. (10 Cal.4th at pp. 580, 586.)

*Levy* was followed, and held retroactive, in *Johnson* v. *Department of Corrections* (1995) 38 Cal.App.4th 1700 [45 Cal.Rptr.2d 740]. In an action by an employee the attorneys reached a settlement by which the employer would pay $83,000 and the employee would resign. Although the employee's attorney told the court the employee had authorized the attorney to enter a settlement on those terms, the employee refused to go forward with resigning. The employee never agreed in open court to resign. (*Id.* at pp. 1704-1705.) The appellate court concluded that under *Levy* the agreement reached by the attorneys could not be enforced under section 664.6. "Settlement negotiations were handled by the parties' attorneys and the court. While the attorneys orally agreed to the settlement during judicially supervised negotiations, and thus orally stipulated to the agreement 'before the court,' . . . plaintiff never personally informed the court that he accepted the terms of this agreement. Absent this personal involvement, the agreement is not enforceable under section 664.6." (38 Cal.App.4th at pp. 1707-1708.) "Consultation between plaintiff and his attorney during the course of negotiations does not constitute the type of direct participation contemplated by *Levy.*" (*Id.* at p. 1709.) *Johnson* also held the *Levy* decision is retroactive, because in *Levy* the Supreme Court resolved conflicting previous interpretations by lower courts. (*Id.* at pp. 1709-1710.)

*Levy* and *Johnson* were followed in *Murphy* v. *Padilla* (1996) 42 Cal.App.4th 707 [49 Cal.Rptr.2d 722]. There the record was ambiguous as to the extent of the client's participation in negotiations during a mediation session, but the client unambiguously refused to sign a written agreement embodying the terms the mediator believed had been agreed upon. The

appellate court held that *Johnson* and *Levy* precluded any contention that the settlement agreement was enforceable as a contract based on its approval by the client's attorney acting as her agent. "[I]f appellant did not personally agree to the alleged oral settlement before Judge Bonney, [it was not enforceable under section 664.6]." (*Id.* at p. 716.)

*Levy, Johnson,* and *Murphy* require reversal here. Appellant was not present in court for the announcement of the settlement agreement, and so obviously did not personally agree to it as required by *Levy*. Appellant did not personally sign the written settlement agreement. Respondents and the trial court relied on the theory rejected in *Levy, Johnson,* and *Murphy*, that it could be assumed Attorney Freedman was authorized to bind appellant to the obligations of the agreement.

In *Levy* v. *Superior Court, supra,* 10 Cal.4th at page 586, footnote 5, the court noted that a settlement agreement not satisfying the "party" requirement of section 664.6 might be enforced by other procedures, such as a motion for summary judgment, a separate suit in equity, or amendment to the pleadings in the section 664.6 action. We express no opinion whether respondents can litigate in another proceeding theories of actual or ostensible authority or ratification.

### DISPOSITION

The judgment and orders appealed from are reversed. Appellant shall recover costs on appeal.

Hastings, J., and Rubin, J.,* concurred.

A petition for a rehearing was denied May 7, 1996, and respondents' petition for review by the Supreme Court was denied July 10, 1996.

---

*Judge of the Municipal Court for the Santa Monica Judicial District sitting under assignment by the Chairperson of the Judicial Council.