110 Cal.Rptr.2d 780 (2001)
91 Cal.App.4th 773
ACCOUNT MANAGEMENT ASSOCIATES, Plaintiff and Respondent,
v.
Sukanit SANGLIMSUWAN, Defendant and Appellant.
No. B143601.
Court of Appeal, Second District, Division One.
August 15, 2001.
Ordered Not Officially Published December 12, 2001.[*]
*781 Law Offices of Claudia C. Bohorquez and Claudia C. Bohorquez, Los Angeles, for Defendant and Appellant.
Law Offices of Steven P. Byrne and Steven P. Byrne, for Plaintiff and Respondent.
MALLANO, J.
In prior litigation, plaintiff and defendant settled by way of a "stipulation for judgment," which obligated defendant to make monthly payments secured by a deed of trust on his residence. Defendant personally signed the deed, and his attorney signed the stipulation.
Defendant defaulted on the payments. Plaintiff filed the present action to foreclose on the trust deed. The trial court entered judgment in plaintiffs favor based on the stipulation for judgment in the earlier case.
The question on appeal is whether the trial court properly granted plaintiff relief under section 664.6 of the Code of Civil Procedurewhich authorizes a trial court to enforce a settlement agreement signed by the parties during pending litigation even though defendant did not sign the stipulation for judgment. We conclude that, without defendant's signature, the *782 stipulation was not enforceable and therefore reverse.

BACKGROUND
On July 10, 1991, American Professional Business Bureau, Inc. (APBB) filed an action against Sukanit Sanglimsuwan in the Los Angeles County Superior Court case of American Professional Business Bureau, Inc. v. Sanglimsuwan (Super. Ct. L.A. County, 1991, No. BC032456). The case settled on the day of trial. Counsel for the parties agreed to the terms of the settlement in open court. Sanglimsuwan was not present.
The open-court settlement was reduced to writing in the form of a stipulation for judgment, which recited that Sanglimsuwan owed APBB $70,000 but that APBB would accept $55,000 as payment in full, as long as Sanglimsuwan made monthly payments of $1,000 until the reduced debt was satisfied. Execution on the judgment was stayed pending Sanglimsuwan's compliance with the payment schedule.
The stipulation stated that the payments were due on the first day of each month. If a payment was late, Sanglimsuwan had a 10 day grace period, which commenced when plaintiff sent notice that the payment had not been received. If Sanglimsuwan failed to cure during the grace period, plaintiff was entitled to an order dissolving the stay of execution and declaring the balance on the full debt ($70,000) immediately due.
To secure the monthly payments, the stipulation required Sanglimsuwan to execute a deed of trust on his residence, with the deed to be executed concurrently with the stipulation. In addition, the stipulation provided: "Plaintiffs attorney shall provide defendant's attorney with a written stipulation for judgment and judgment setting forth the foregoing terms and defendant's attorney shall sign and return the same to plaintiffs attorney." The stipulation concluded with, "The court shall retain jurisdiction under CCP § 664.6 to enforce this stipulation for judgment."
On May 28, 1992, Sanglimsuwan's attorney signed the stipulation for judgment. Sanglimsuwan did not sign the stipulation, but he did sign the deed of trust in favor of APBB. On February 17, 1993, the superior court entered judgment, essentially repeating the language of the stipulation.
Between June 1992 and August 1993, Sanglimsuwan made 13 payments, two of which were returned for insufficient funds. He did not make any additional payments. As of August 25, 1993, Sanglimsuwan was in default.
On January 3, 1994, Sanglimsuwan filed for bankruptcy. APBB applied for relief from the bankruptcy stay. On June 7, 1994, the bankruptcy case was dismissed.
Five years later, on April 2, 1999, APBB filed this action to foreclose on the trust deed. The complaint alleged that Sanglimsuwan "became obligated to APBB by executing a Stipulation for Judgment in a [prior] case . . ." and that he had breached the stipulation by failing to make the requisite payments. (Before trial, APBB assigned its claim to a related company, Account Management Associates. For clarity, we will continue to refer to the company as APBB.)
The case was tried to the court in April 2000 and took less than a day. The president of APBB testified about the stipulation for judgment and the amount due from Sanglimsuwan. No one else testified. No evidence of liability on any other theory was offered. Sanglimsuwan moved for a nonsuit on the ground that the stipulation, without his signature, was not enforceable under section 664.6 of the Code of Civil Procedure. (Hereafter section 664.6.) The trial court did not rule on the motion at that time but asked the parties to submit briefs on the issue. They did so.
*783 On May 19, 2000, the trial court heard further argument and ruled that the stipulation for judgment was enforceable under section 664.6. On June 5, 2000, the trial court entered judgment in favor of APBB for $146,385.89. Sanglimsuwan filed a timely appeal.

DISCUSSION
Because this appeal involves the application of statutory law to undisputed facts, we review the trial court's decision de novo. (State Farm Mut. Auto. Ins. Co. v. Department of Motor Vehicles (1997) 53 Cal.App.4th 1076, 1081, 62 Cal.Rptr.2d 178.)
APBB asserted at the close of trial that it was entitled to judgment pursuant to the terms of the stipulation for judgment. In doing so, APBB relied on section 664.6 of the Code of Civil Procedure, which states: "If parties to pending litigation stipulate, in a writing signed by the parties outside the presence of the court or orally before the court, for settlement of the case, or part thereof, the court, upon motion, may enter judgment pursuant to the terms of the settlement. . . ." No other grounds for liability were argued. Thus, the only debt or obligation upon which the deed of trust could have been foreclosed was the stipulation for judgment, as enforced under section 664.6. (See Code Civ. Proc, §§ 725a, 726, subd. (a).)
On appeal, Sanglimsuwan argues that the stipulation for judgment was unenforceable under section 664.6 and that the trial court's ruling should be reversed. We agree.
Typically, section 664.6 is enforced by filing a motion in the action in which the settlement was reached. Here, a new action was filed, and certain issues related to the stipulation were tried to the court. Yet, in the trial court and on appeal, the parties have addressed only one theory of liability: the enforcement of the stipulation for judgment under section 664.6.
In the opening brief, Sanglimsuwan raised four issues on appeal. First, "[d]id the Stipulation for Judgment violate the requirements of C.C.P. Section 664.6[,] rendering it unenforceable and the Deed of Trust null and void?" Second, "[d]id the entry of judgment pursuant to the Stipulation for Judgment violate the `one form of action' rule?" Third, "[w]as the obligation secured by the Deed of Trust extinguished by the filing of the judgment in the prior action?" And, finally, "[d]id the court err in awarding damages which included the awarding of interest upon interest?" [1]
According to APBB, three issues are presented on appeal. First, "[i]s the Stipulation for Judgment unenforceable under C.C.P. 664.6?" Second, "[i]s [the] Complaint to foreclose [on the] Deed of Trust a violation of C.C.P. 726(a)[, the `one form of action' rule]?" And, last, "[i]s the Trial Court's determination of the amount due a factual issue?"
Thus, the parties agree that the validity of the judgment in this case rests on whether the stipulation for judgment is enforceable under section 664.6. In that regard, we note that the applicability of section 664.6 is not affected by the trial court's decision to conduct a trial on certain issues pertinent to the stipulation for judgment. "A trial court, when ruling on a section 664.6 motion, acts as a trier of fact." (Skulnick v. Roberts Express, Inc. (1992) 2 Cal.App.4th 884, 889, 3 Cal. Rptr.2d 597.) "In acting upon a section *784 664.6 motion, the trial court must determine whether the parties entered into a valid and binding settlement of all or part of the case. In making this determination, trial judges, in the sound exercise of their discretion, may receive oral testimony or may determine the motion upon declarations alone." (Corkland v. Boscoe (1984) 156 Cal.App.3d 989, 994, 203 Cal.Rptr. 356; accord, Fiore v. Alvord (1985) 182 Cal. App.3d 561, 565, 221 Cal.Rptr. 400.)[2]
Of course, section 664.6 states that "the court, upon motion, may enter judgment pursuant to the terms of the settlement." (Italics added.) In this case, Sanglimsuwan sought a nonsuit on the ground that the stipulation for judgment could not be enforced under section 664.6. The trial court did not rule on the nonsuit issue but asked the parties to file supplemental papers addressing it. APBB argued that the stipulation was enforceable, and the trial court agreed. That, we think, was sufficient to constitute the making of a "motion."
We now turn to the question of whether Sanglimsuwan's signature on the trust deed satisfied the requirement under section 664.6 that the "parties" sign the written settlement document. In Levy v. Superior Court (1995) 10 Cal.4th 578, 41 Cal. Rptr.2d 878, 896 P.2d 171, the Supreme Court held that "the term `parties' as used in section 664.6 . . . means the litigants themselves, and does not include their attorneys of record." (Id. at p. 586, 41 Cal. Rptr.2d 878, 896 P.2d 171 (Levy).) As the high court explained:
"Unlike the steps an attorney may take on behalf of the client that are incidental to the management of a lawsuit, such as making or opposing motions, seeking continuances, or conducting discovery, the settlement of a lawsuit is not incidental to the management of the lawsuit; it ends the lawsuit. Accordingly, settlement is such a serious step that it requires the client's knowledge and express consent . . . . [¶] . . . [¶] . . .
"[Section 664.6] created a summary, expedited procedure to enforce settlement agreements when certain requirements that decrease the likelihood of misunderstandings are met. Thus the statute requires the `parties' to stipulate in writing or orally before the court that they have settled the case. The litigants' direct participation tends to ensure that the settlement is the result of their mature reflection and deliberate assent. This protects the parties against hasty and improvident settlement agreements by impressing upon them the seriousness and finality of the decision to settle, and minimizes the possibility of conflicting interpretations of the settlement. . . . It also protects parties from impairment of their substantial rights without their knowledge and consent." (Levy, supra, 10 Cal.4th at pp. 583-585, 41 Cal.Rptr.2d 878, 896 P.2d 171, citations and fn. omitted.)
Here, the stipulation for judgment was executed before Levy was decided. But that is of no consequence because Levy applies retroactively. (Johnson v. Department of Corrections (1995) 38 Cal. App.4th 1700, 1709-1710, 45 Cal.Rptr.2d 740 (Johnson); Burckhard v. Del Monte Corp. (1996) 48 Cal.App.4th 1912, 1916-1917, 56 Cal.Rptr.2d 569.)
*785 In contrast to the parties in Levy, Sanglimsuwan was involved in implementing the settlement. Although he did not agree to the settlement in open court or sign the subsequent written version, he did execute the trust deed and, for a time, made payments in accordance with the stipulation for judgment. Nevertheless, we find this to be a distinction without a difference.
As stated in Levy, section 664.6 "requires the `parties' to stipulate in writing or orally before the court that they have settled the case." (Levy, supra, 10 Cal.4th at p. 585, 41 Cal.Rptr.2d 878, 896 P.2d 171.) Sanglimsuwan did neither. He did not sign a settlement agreement. Nor was he present in court when counsel agreed to settle the case.
Further, "[t]he litigants' direct participation [in the settlement process] tends to ensure that the settlement is the result of their mature reflection and deliberate assent." (Levy, supra, 10 Cal.4th at p. 585, 41 Cal.Rptr.2d 878, 896 P.2d 171.) Sanglimsuwan's signature on the trust deed and his payments for 13 months do not indicate that he participated in negotiating the terms of the settlement. Indeed, even "[consultation between plaintiff and his attorney during the course of negotiation does not constitute the type of direct participation contemplated by Levy." (Johnson v. Department of Corrections, supra, 38 Cal.App.4th at p. 1709, 45 Cal.Rptr.2d 740.)
The record does not disclose when Sanglimsuwan first learned about the settlement or when, if ever, he knew all of its terms. On this record, we cannot say that he reflected upon or assented to, for example, the monthly deadline for making the payments, the acceleration clause, the provision requiring the payment of the full $70,000 rather than $55,000 if he missed a single payment, or the ex parte procedure to be used in the event of a default. We do not know what he asked or what he was told about the trust deed or the stipulation for judgment.
Levy created a bright-line rule for purposes of section 664.6: If a civil action is settled out of court, the terms must be in writing, and the agreement must be signed by the litigants. APBB's position muddies the waters and requires a court to speculate about what the litigants knew and when they learned it. In our view, if the litigant does not sign the document containing the terms of the settlement but instead signs a collateral document that does not refer to, or incorporate, the terms of the principal document, section 664.6 does not apply.
In Cortex v. Kenneally (1996) 44 Cal. App.4th 523, 51 Cal.Rptr.2d 671, Division Four of this court addressed the application of section 664.6 in similar circumstances. There, one of the defendants in the initial litigation, Sharon Kenneally, was sued together with her husband and two related companies. An attorney who represented all of them stated orally in court, on the record, that they agreed to settle the case on certain terms. Sharon was not present in court.
Later, a written settlement agreement which superseded the oral agreement was signed by Sharon's attorney and her husband, but not by her. The agreement called for periodic monthly payments by "defendants" and required a security interest to guarantee payment. After learning about the settlement, Sharon offered to provide some real property she owned to be used as security. There was no response to the offer. Sharon made 11 monthly payments to the plaintiffs, signing checks that were drawn on the account of one of the defendant companies, of which she was the chief operating officer. After her husband filed a petition in bankruptcy, *786 Sharon ceased making the monthly payments. Plaintiffs then moved to enforce the settlement against her, relying on section 664.6. The trial court ruled in their favor.
On appeal, the court reversed, stating: "[Sharon] was not present in court for the announcement of the settlement agreement, and so obviously did not personally agree to it as required by Levy [, supra, 10 Cal.4th 578, 41 Cal.Rptr.2d 878, 896 P.2d 171]. [She] did not personally sign the written settlement agreement." (Cortez v. Kenneally, supra, 44 Cal.App.4th at p. 530, 51 Cal.Rptr.2d 671.)
In the instant case, we conclude that, consistent with Cortez, the stipulation for judgment cannot be enforced pursuant to section 664.6. As in Cortez, the defendant here became aware of the settlement at some point and was told about some of its terms. Sanglimsuwan, like Sharon, knew something about the settlement. But what he knew and when he knew it remain a mystery.
In fact, in Cortez, the trial court found that "`[i]t's inconceivable [Sharon] didn't know about the substance of [the settlement agreement] and consider herself to provide security under it.'" (Cortez v. Kenneally, supra, 44 Cal.App.4th at p. 527, 51 Cal.Rptr.2d 671.) The same could be said in this case. Sanglimsuwan understood that the lawsuit had settled, that he had to execute a deed of trust, and that he had to make periodic payments. Yet, for all we can tell, he learned about those conditions after his attorney had agreed to them in court. Perhaps Sanglimsuwan went along with the settlement because he thought he had no other choice.
In Cortez, Sharon was not bound under section 664.6 even though it was "inconceivable" that she did not know the substance of the settlement agreement. The same result should apply in this case.[3]
In closing, we reject APBB's argument that, regardless of when or whether Sanglimsuwan learned about the stipulation for judgment, he ratified it by subsequently executing the trust deed and making 13 payments. Such an exception would swallow the rule, leading one court to say that, for purposes of section 664.6, the decisions in Levy, supra, 10 Cal.4th 578, 41 Cal. Rptr.2d 878, 896 P.2d 171, and Johnson, supra, 38 Cal.App.4th 1700, 45 Cal.Rptr.2d 740, "appear to reject traditional agency analysis, which holds that `"the client as principal is bound by the acts of the attorney-agent within the scope of his actual authority (express or implied) or his apparent or ostensible authority; or by unauthorized acts ratified by the client."'" (Murphy v. Padilla (1996) 42 Cal.App.4th 707, 716, 49 Cal.Rptr.2d 722, italics added.)
DISPOSITION
The judgment is reversed. Defendant is entitled to costs on appeal.
SPENCER, P.J., concurs.
MIRIAM A. VOGEL, J., dissenting.
I am puzzled by the majority's characterization of the issue on this appeal as "whether the trial court properly granted plaintiff relief under section 664.6 of the Code of Civil Procedure . . . ."[1] (Typed opn., p. 781.) The plaintiff didn't seek relief under section 664.6, and this appeal *787 is not one from an order granting a motion to enforce the stipulation, which admittedly wasn't signed by Sanglimsuwan. It is an appeal from a judgment in an action to foreclose a deed of trust which was signed by Sanglimsuwan and which secured an obligation that he performed for more than a year.
Likewise, I am puzzled by the majority's failure to consider the necessary consequences of its decisionparticularly the fact that, implicit in its holding, is the conclusion that Sanglimsuwan is entitled to recover the $11,000 he paid (month after month for 13 months) in performance of the obligation he accepted when he signed the deed of trust.
Most puzzling, however, is the majority's justification for casting the facts and mischaracterizing the plaintiffs arguments to fit an obviously predetermined result. I haven't a clue about why they've approached this case the way they have, and thus can only respond by stating all of the relevant facts and the law that applies to this case. In my view, the judgment should be affirmed.

A.
In 1991, American Professional Business Bureau, Inc. (APBB) sued Sukanit Sanglimsuwan and others for money. On the day of trial, in open court, the parties' lawyers orally agreed to the terms of a settlement, and further agreed that the settlement would be reduced to a writing. Sanglimsuwan was not present in court.
As agreed by the lawyers, the documents (a stipulation for judgment and a deed of trust) were prepared. According to the stipulation for judgment, APBB was to have a judgment for $70,000 recoverable from Sanglimsuwan, but execution of the judgment was to be stayed on condition that Sanglimsuwan paid $55,000 to APBB, payable in monthly installments of $1,000; if Sanglimsuwan missed a payment, APBB would be entitled to apply ex parte for an order dissolving the stay of execution and (with credit for the monthly payments) the balance of the $70,000 (plus interest) would be immediately due; and Sanglimsuwan was to secure payment by executing and delivering to APBB a recordable deed of trust encumbering Sanglimsuwan's residence. On May 28, 1992, the stipulation was signed by both attorneys but not by either party.
On the same day the stipulation was signed by the lawyers, the deed of trust contemplated by the stipulation was executed by Sanglimsuwan in the presence of a notary public.
On June 10, 1992, the stipulation was filed. On June 24, the deed of trust was recorded. On February 17, 1993, a judgment (approved as to form by Sanglimsuwan's lawyer) was entered in conformance with the stipulation.
In 1992 and 1993, Sanglimsuwan made 11 payments (11 checks for $1,000 each) in conformance with the stipulation (plus two additional payments but those checks were returned for nonsufficient funds) and Sanglimsuwan defaulted on his promise to pay. On January 3, 1994, Sanglimsuwan filed for bankruptcy, but the bankruptcy case was dismissed on June 7. On July 23, 1997, APBB applied ex parte for relief from the stay of execution on the judgment, and the court dissolved the stay.
On April 2, 1999, APBB filed this action for judicial foreclosure of the deed of trust executed by Sanglimsuwan, alleging the facts summarized above (that is, the terms and execution of the stipulation in the earlier case, the execution and recordation of the deed of trust, Sanglimsuwan's default, and the order dissolving the stay of execution). APBB alleged that (as of April 1999) $58,000 remained due and *788 payable, plus interest. In May, Sanglimsuwan answered the complaint, alleging four conclusory affirmative defenses (failure to state a cause of action, limitations, equity (estoppel, laches, waiver, and unclean hands), and the one form of action rule). Sanglimsuwan did not mention section 664.6 in his answer (either as an affirmative defense to foreclosure or otherwise).
The foreclosure case was tried to the court. APBB's president, Tyron Lee Forrest, testified for APBB (he was the only witness).[2] Forrest authenticated APBB's records of Sanglimsuwan's debt, payments, and default (all of which were received in evidence). On cross-examination by Sanglimsuwan's lawyer, Forrest was asked if he had signed the 1992 stipulation; he said he had not, but that he was aware of it. When APBB rested, Sanglimsuwan moved for nonsuit on the ground that the stipulation was "null and void" because it was not signed by the parties (as required by section 664.6), only their lawyers. APBB objected on several grounds, including waiver (by Sanglimsuwan's failure to plead section 664.6 as an affirmative defense in the foreclosure action) and irrelevancy (that is, that APBB's action was on the deed of trust, which was signed by Sanglimsuwan, and that it was not a motion to enforce a settlement).[3] After briefing and further argument (based on Sanglimsuwan's representation that he did not intend to present any defense), the trial court denied the motion for nonsuit on the ground that the deed of trust gave APBB additional rights. Sanglimsuwan did not testify or present (or offer to present) any evidence of any kind.
The trial court gave judgment to APBB, noting the absence of any defense evidence and commenting on the fact that there was "no dispute but that [Sanglimsuwan] knew he was engaging in something that gave [APBB] additional rights." Sanglimsuwan appeals from the judgment of foreclosure.

B.
The majority says the stipulation for judgment is void because Sanglimsuwan did not sign it. The majority simply ignores the deed of trust. There are several problems with the majority's approach.

1.
Section 664.6 provides: "If parties to pending litigation stipulate, in a writing signed by the parties outside the presence of the court or orally before the court, for settlement of the case, or part thereof, the court, upon motion, may enter judgment pursuant to the terms of the settlement. If requested by the parties, the court may retain jurisdiction over the parties to enforce the settlement until performance in full of the terms of the settlement."
What this means in the context of this case is that, upon motion in the 1991 case by APBB to compel Sanglimsuwan to execute the deed of trust if he had refused to do so in conformance with the stipulation for judgment, the fact that Sanglimsuwan had not signed the stipulation would defeat the motion. (Levy v. Superior Court (1995) 10 Cal.4th 578, 583 585, 41 Cal.Rptr.2d 878, 896 P.2d 171.) But APBB did not file this action to enforce *789 the stipulationbecause Sanglimsuwan long ago complied with the terms of the stipulation by executing the deed of trust and, for at least 11 months, making the agreed upon payments. Rather, this action was filed to foreclose the deed of trust that Sanglimsuwan did sign. Section 664.6 is irrelevant.

2.
But even assuming that section 664.6 had to be factored into the analytical equation, the majority would still be wrong. As the Supreme Court explained in Levy v. Superior Court, supra, 10 Cal.4th at page 585, 41 Cal.Rptr.2d 878, 896 P.2d 171, the parties' signatures are required because the "litigants' direct participation tends to ensure that the settlement is the result of their mature reflection and deliberate assent. This protects the parties against hasty and improvident settlement agreements by impressing upon them the seriousness and finality of the decision to settle, and minimizes the possibility of conflicting interpretations of the settlement." All of those considerations are met in this case.
Sanglimsuwan "direct[ly] participat[ed]" in the settlement when he executed the deed of trust and, in conformance therewith, sent $1,000 checks to APBB for 11 months. Plainly, the settlement of the underlying case was "the result of [Sanglimsuwan's] mature reflection and deliberate assent," for certainly Sanglimsuwan would not have ratified the settlement by encumbering his residenceand (on at least 11 separate occasions when he sent the checks) ratified and honored the debt secured by the encumbrancewithout such reflection and deliberate assent, or without realizing "the seriousness and finality" of his decision, or without understanding the material terms of the agreement. As the trial court pointed out, there is absolutely no evidence to suggest otherwise. Of course, there is no possibility of "conflicting interpretations" in the context of this casethere is no agreement to interpret, only a deed of trust subject to foreclosure.

3.
The majority opinion ignores the fact that section 664.6 applies only to the motion created by that statutea motion made in the case resolved by the settlement (which is why the court that accepted the 1991 settlement retained jurisdiction). As our Supreme Court noted in Levy, "this statutory procedure is not the exclusive means to enforce a settlement. (See Kilpatrick v. Beebe (1990) 219 Cal.App.3d 1527, 1529 [269 Cal.Rptr. 52]) Alternative procedures are a motion for summary judgment, a separate suit in equity, or an amendment to the pleadings in [the underlying] action." (Levy v. Superior Court, supra, 10 Cal.4th at p. 586, fn. 5, 41 Cal. Rptr.2d 878, 896 P.2d 171.)[4]
*790 Kilpatrick, the case cited with approval by the Supreme Court, rejected the contention that section 664.6 was intended to provide the exclusive means of enforcing settlements and held: "Nothing in the language of section 664.6 suggests it was intended to be exclusive. Rather, it appears to do nothing more than provide a streamlined method for reducing a stipulated settlement to judgment. . . . `[S]ection 664.6 is an expedient and cost effective means of enforcing a settlement agreement. It is a valid alternative to a motion for summary judgment when a question of fact exists that can justly be resolved by a court sitting as a trier of fact based on the supporting papers filed with the motion. This means of enforcing a settlement, however, should only be utilized when the circumstances in which the settlement agreement was reached, or the record of the settlement, minimizes the possibility of conflicting interpretations. . . .'[¶] . . . .
"Appellants' argument is based on their assertion that by omitting oral, out-of-court settlements from section 664.6, `the Legislature meant to limit enforcement of settlements by pretrial motion to situations where it is reasonably ascertainable whether an actual meeting of the minds of the parties had actually taken place.' While that statement may accurately describe the Legislature's purpose in limiting application of the more expedient procedure of section 664.6, it does not support a conclusion that the Legislature intended to make the traditional summary judgment procedure unavailable for settlements not described in section 664.6.[¶] We see no plausible public policy reason for denying pretrial enforcement in the rare case involving an oral, out-of-court settlement which meets all the stringent requirements for summary judgment." (Kilpatrick v. Beebe, supra, 219 Cal.App.3d at pp. 1529-1530, 269 Cal.Rptr. 52.)
My colleagues do not address this issue.[5] They do not acknowledge that Sanglimsuwan had the opportunity to testify at the foreclosure trial (an opportunity he would not have had in the section 664.6 context). Instead, they simply conclude without discussion that compliance with section 664.6 is mandatory without regard to the nature of the action or the means by which a particular settlement was reached. The irony is that APBB's "settlement" was not oralit was memorialized by a formal writing signed by both lawyers and a deed of trust executed by Sanglimsuwanwhich is far more than the Kilpatrick court had in mind when it suggested that a purely oral settlement could be enforced, under appropriate circumstances, without reference to section 664.6. (See Nicholson v. Borah (1991) 233 Cal. App.3d 1671, 1681, 285 Cal.Rptr. 441 [settlements that are not enforceable under section 664.6 are governed by the legal principles applicable to contracts in general; unless a writing is required by the statute of frauds, oral settlements are enforceable in the same manner as oral contracts]; Robertson v. Chen (1996) 44 Cal. App.4th 1290, 1293, 52 Cal.Rptr.2d 264; Harris v. Rudin, Richman & Appel (1999) 74 Cal.App.4th 299, 306, 87 Cal.Rptr.2d 822 [a determination that the requirements of section 664.6 are not satisfied is not dispositive as to whether a settlement con *791 tract was made]; and see Cortez v. Kenneally (1996) 44 Cal.App.4th 523, 530, 51 Cal.Rptr.2d 671.)[6]

4.
Since the majority opinion does not address the other issues raised by Sanglimsuwan, I see no need to do so in this dissentother than to note that none of them have merit.
C.
For all these reasons, I view the majority opinion as a gross miscarriage of justice.
NOTES
[*] The Supreme Court ordered that the opinion be not officially published. (See California Rules of Court Rules 976 and 977.)
[1] The third issue is simply a rephrasing of the first one. Both are premised on APBB's alleged failure to comply with section 664.6.
[2] We recognize that section 664.6 "`is not the exclusive means to enforce a settlement' and `[alternative procedures are a motion for summary judgment, a separate suit in equity, or an amendment to the pleadings in this action.'" (Davidson v. Superior Court (1999) 70 Cal.App.4th 514, 537, 82 Cal.Rptr.2d 739.) We express no view on whether any of these alternatives are available here.
[3] APBB argues that Sanglimsuwan cannot challenge the validity of the stipulation for judgment because he waited too long to set it aside. However, we are not setting the stipulation aside, nor are we declaring it void. Rather, we conclude that the stipulation cannot be enforced under section 664.6.
[1] All section references in this dissent are to the Code of Civil Procedure.
[2] At some point, Sanglimsuwan's obligation to APBB was assigned to Account Management Associates (APBB's parent corporation). Since Forrest is the president of both companies, I refer to them collectively as APBB.
[3] More specifically, APBB's lawyer moved to strike Sanglimsuwan's trial brief and the argument advanced in support of his motion for nonsuit. Sanglimsuwan, and only Sanglimsuwan, argued that section 664.6 applied. APBB simply responded.
[4] The majority says "the parties" have addressed "only one theory of liability: the enforcement of the stipulation for judgment under section 664.6." (Typed Opn., p. 783.) Not so. APBB's brief makes all of the points discussed in this dissent. In this regard, I must emphasize that the majority's characterization of the parties' arguments in the trial court and on appeal is misleading. As noted above, Sanglimsuwan is the one who raised section 664.6 in the trial court, and APBB did no more than respond. The same is true about the appellate briefs. Sanglimsuwan, as the appellant, framed the issues. He is the one who says the foreclosure action is barred by section 664.6. As respondent, APBB has responded to those issues and, in that context, has discussed most of the points covered by this dissent. In short, the majority opinion is just plain wrong when it says that "APBB relied on section 664.6 . . .," that "the parties have addressed only one theory of liability: the enforcement of the stipulation for judgment under section 664.6," and that "the parties agree that the validity of the judgment in this case rests on whether the stipulation for judgment is enforceable under section 664.6." (Typed opn., pp. 783-784.) APBB has discussed its right to foreclose on the deed of trust executed by Sanglimsuwan.
[5] The majority opinion "recognize[s] that section 664.6 is not the exclusive means to enforce a settlement" but "expresses] no view on whether any of [the] alternatives are available here." (Typed opnp. 784, fn. 2.) The majority misses the point-this foreclosure action is one of the permissible alternatives.
[6] In my view, the majority's reliance on Cortez misses the point. In Cortez, Sharon Kenneally was not present in court when the settlement was reached in a medical malpractice action against her husband, a doctor. She was not present when the terms of the settlement (including monthly payments) were explained. Her husband signed the settlement agreement (purportedly on behalf of himself and his wife) but she did not sign it. The most that can be said is that, "[u]pon learning of the settlement agreement [Sharon Kenneally] did make an offer to provide certain real property she owned as security for the future payments [due under the terms of the settlement signed by her husband]," and she did sign some of the checks written on her husband's business account for the payments due under the settlement. (Cortez v. Kenneally, supra, 44 Cal.App.4th at pp. 526-527, 51 Cal.Rptr.2d 671.) But she never signed a deed of trust on her property, and she never sent a personal check in payment of her husband's debt. On the facts of our case, and particularly because Cortez came before the court on a motion made pursuant to section 664.6, Cortez is inapposite.