## 2001 OK CIV APP 36

**Dolores COULTER, as Personal Representative of the Estate of Marguerite D. Whitaker, deceased, Plaintiff/Appellant,**

v.

**CAREWELL CORPORATION OF OKLAHOMA, d/b/a Rest Haven Nursing Home, Defendant/Appellee.**

**No. 94,036.**

Court of Civil Appeals of Oklahoma, Division No. 2.

March 6, 2001.

Roger R. Williams, Donald B. Bolt, III, Williams & Bolt, P.A., Tulsa, OK, and, Carl G. Gibson, Nowata, OK, for Plaintiff/Appellant.

John R. Paul, Leah McCaslin Kinsey, The Paul Law Firm, Tulsa, OK, for Defendant/Appellee.

COLBERT, Judge:

¶ 1 Dolores Coulter appeals an order of the trial court overruling her motion to reconsider a prior order which refused to enforce a settlement agreement between Ms. Coulter and Carewell Corporation of Oklahoma, d/b/a Rest Haven Nursing Home (Carewell). The issue to be determined on appeal is whether the trial court abused its discretion in overruling the motion to reconsider. Based upon our review of the record and the applicable law, we find no abuse of discretion and affirm.

## BACKGROUND

¶ 2 This case originated as an action for wrongful death brought by Ms. Coulter against Carewell. In May 1996, Marguerite Whitaker, Ms. Coulter's mother and a resident of Rest Haven Nursing Home, was involved in a drowning incident which allegedly occurred when she was left unattended while bathing. In April 1998, Ms. Coulter was appointed personal representative of her mother's estate. She initiated the suit against

Carewell that same month, and, in March 1999, Carewell filed a petition for bankruptcy.

¶3 Carewell later agreed to mediate Ms. Coulter's claims, provided that the terms of any potential settlement would be kept confidential; that the settlement would be approved by the bankruptcy court; and that the proceeds would be paid by a source other than Carewell. On April 27, 1999, the case was mediated through Oklahoma Mediation/Arbitration Services and settled pursuant to financial terms mutually acceptable to the parties. The parties did not sign a settlement agreement on that day, but did sign a mediation agreement which outlined the financial terms of the settlement. The mediation agreement specifically states, "We intend the above agreement to be a legally binding and enforceable settlement contract and acknowledge that we entered into same without coercion or duress." They agreed that counsel for Carewell would draft the settlement agreement and send it to Ms. Coulter for her signature.

¶4 In May 1999, Carewell forwarded the settlement agreement, which included a release of all claims, to Ms. Coulter. The settlement agreement provided that Ms. Coulter would accept an undisclosed sum of money as full settlement of her claims in this case, as well as in a companion case.[1] The agreement reads in pertinent part:

In consideration of the payment of the sum of * * * * * the receipt of which is hereby acknowledged, the undersigned, Dolores Coulter, as Personal Representative of the Estate of Marguerite D. Whitaker, Deceased, (hereinafter referred to as "RELEASOR"), does hereby release, remise, acquit, and forever discharge Rest Haven Nursing Home, L.L.C.; Carewell Corporation of Oklahoma, Inc., and Tutera Health Care Management, L.P. and all of their present and former agents, servants, employees, insurers, affiliated entities, sister companies, predecessors, successors, assigns, subsidiaries, affiliates, partners, officers, directors, shareholders, or other controlling persons (hereinafter referred to as "RELEASEES"), from each and every right, claim, debt, demand, action, cause of action, suit and proceeding of any kind, whether known or unknown, which RELEASOR ever had, now have or may have in the future against such persons and entities, including but not limited to any claims arising out of the death of Marguerite D. Whitaker or arising from any care or treatment to Marguerite D. Whitaker at Rest Haven Nursing Home in Tulsa, Oklahoma. . . .

* * *

RELEASOR also covenants with RELEASEES to indemnify and save RELEASEES harmless from any claims for medical expenses or liens that RELEASEES may hereafter be compelled to pay on behalf of Marguerite D. Whitaker or because of any injury or damage to Marguerite D. Whitaker or her heirs.

¶5 In June 1999, the district court of Nowata County, having jurisdiction over the probate action of the decedent's estate, approved the settlement agreement. The court found "that the agreed upon amount is reasonable under the circumstances and no action may be maintained at law or equity in the future to litigate any issue arising out of the facts of the lawsuits." The bankruptcy court also approved the settlement that same month.

¶6 Ms. Coulter, however, refused to sign the release. On August 30, 1999, counsel for Ms. Coulter advised Carewell that she would not sign the release because the mediation agreement had not been contingent upon her signing it.[2] Counsel further advised Carewell that a signed dismissal with prejudice could be exchanged for the settlement draft. Over the next few weeks, there were various communications between the parties concerning Ms. Coulter's refusal to sign the release. Carewell ultimately refused to tender the settlement proceeds unless she agreed to sign it. Counsel for Carewell advised Ms.

---

1. The companion case is not in controversy here.

2. Apparently, Ms. Coulter initially objected to signing the release because it contained an indemnification clause. She later stated that she would not sign the release because it had not been negotiated during the mediation.

Coulter that if she did not sign the release, Carewell would likely be forced to file a motion to enforce the settlement agreement in order to resolve the issue.

¶ 7 In September 1999, Ms. Coulter filed a motion to enforce the settlement agreement in the Tulsa County District Court. She argued in her motion that the mediation agreement was not contingent upon her signing a release, and, essentially, that the court should enforce the financial terms of the settlement agreement without requiring her to execute the release. Carewell argued that Ms. Coulter was put on notice that the release would be forthcoming when, during the mediation, counsel for Carewell informed Ms. Coulter's attorney that she did not have time to draft the release on that day, but would draft it and forward it to her at a later date. Carewell submitted the affidavit of R. Lyle Clemens, the attorney who mediated the case. Mr. Clemens attested that it was his custom to advise that the attorneys would prepare a release and a dismissal with prejudice which would be exchanged for the settlement amount. He stated, "I have no reason to believe that I did not make the same comments to the parties in this action at the close of mediation, and I am confident that the parties understood that the attorneys would prepare a Dismissal with Prejudice as well as a Release of all Claims to be executed by the Plaintiff."

¶ 8 A hearing was held on the motion in October 1999. At this hearing, counsel for Ms. Coulter reiterated her position that nothing had been said during the mediation concerning the execution of a release. Counsel for Carewell explained to the court that, in her position, a dismissal with prejudice, by itself, would not be sufficient to terminate the litigation. The release, on the other hand, would protect Carewell against potential suits by other relatives of the decedent who may not have been notified of the suit during the probate proceedings.[3]

¶ 9 The trial court denied the motion to enforce the agreement. In its order filed November 9, 1999, the court stated, "Plaintiff shall either execute the Dismissal with Prejudice AND the Settlement Agreement and Release of All Claims as presented by Defendant's counsel, or proceed with the litigation of this action."

¶ 10 On November 4, 1999, Ms. Coulter filed a motion for reconsideration/new trial. She argued, among other things, that Carewell was attempting to avoid the settlement agreement by requiring her to execute the release. The trial court overruled this motion in an order filed December 2, 1999, in which the court stated, "[t]he 'New Trial' request has, in effect, been granted by this Court's Order on Plaintiff's Motion to Enforce Settlement · Agreement, in that the Plaintiff was ordered to either execute the Dismissal With Prejudice AND the Settlement Agreement and Release of All Claims as presented by Defendant's counsel, or proceed with the litigation of this action, after the bankruptcy stay has been lifted." [4]

¶ 11 From the order overruling her motion to reconsider, Ms. Coulter appeals.

## STANDARD OF REVIEW

¶ 12 "[A] motion for new trial or reconsideration constitutes a matter addressed to the sound discretion of the court, whose decision thereon will not be disturbed unless erroneous as a matter of law, or arbitrary and capricious." *Vela v. Hope Lumber & Supply Co.*, 1998 OK CIV APP 162, ¶ 7, 966 P.2d 1196, 1198 (citing *Bennett v. Hall*, 1967 OK 122, 431 P.2d 339). On appeal, "every presumption should be indulged in favor of the trial court's ruling." *Bennett*, 1967 OK 122, ¶ 5, 431 P.2d 339, 341.

## DISCUSSION

¶ 13 We begin our discussion by noting two important principles of the law

---

3. The hearing transcript reveals that the decedent has a sister who was unaware of the litigation, as well as two sons, one of whom resides in Texas; the other is described as a transient. It appears the son in Texas expressed disinterest in the litigation; however, it is uncertain whether the other son knew of it.

4. In her brief-in-chief, Ms. Coulter points out that she was not seeking a new trial in the sense that the court granted her one in its order. Rather, her motion for reconsideration/new trial was merely a request that the court review its previous order for errors of law.

regarding settlement agreements. First, the use of mediation procedures is encouraged by the courts. *Vela,* 1998 OK CIV APP 162, ¶ 6, 966 P.2d at 1198. Second, in Oklahoma, a settlement agreement "constitutes a contract between the parties which should not be set aside absent fraud, duress, undue influence, or mistake." *Id.*

¶ 14 In her brief, Ms. Coulter raises two propositions of error. We first address her second proposition, in which she argues that the trial court's decision to overrule her motion for reconsideration was both erroneous as a matter of law as well as arbitrary and capricious. She relies on *Vela* in support of this argument. Her reliance, however, is misplaced.

¶ 15 In *Vela,* the plaintiff, who had been injured in an automobile accident, sued the driver and owner of the other vehicle involved. The parties entered into a mediation agreement, which provided that the defendants would pay the plaintiff a certain sum of money, and, in turn, the plaintiff would dismiss the case with prejudice. The plaintiff initialed the agreement, demonstrating her understanding that the mediation agreement was intended to be a legally binding contract.

¶ 16 Shortly after the mediation agreement was signed, the defendants delivered the agreed upon sum, in addition to a dismissal and release. The plaintiff refused to execute the dismissal and release, and the defendants filed a motion to enforce the settlement agreement. The plaintiff argued that the mediation agreement was either void or voidable on several grounds, including economic duress, coercion, unconscionability, and undue influence. The trial court set aside the agreement, and the defendants filed a motion for reconsideration, which the trial court granted. The trial court subsequently denied the plaintiff's motion for a new trial, and she appealed.

¶ 17 The appellate court rejected the plaintiffs arguments of threats and coercion, stating:

from our review of the record, we discern no error of law, abuse of discretion or arbitrary and capricious action by the trial court in denying Plaintiff's motion for new trial, the record in our view showing no

*facts* indicating otherwise than Plaintiff signed the Mediation Agreement of her own free will, that she understood the nature and consequences of her acceptance of the settlement terms, and that the Agreement contains no ambiguity which could have caused its execution by mistake.

*Id.* at ¶ 8, 966 P.2d at 1199. The court affirmed the trial court's order denying the motion for new trial. *Id.* at ¶ 10, 966 P.2d at 1199.

¶ 18 *Vela* is factually distinguishable from the instant case for two important reasons. First, the plaintiff in *Vela* refused to execute the release on the grounds of alleged coercion and threats. Ms. Coulter, on the other hand, has made no such argument. She merely argues that the release was not mentioned during mediation. Next, *Vela* represents the more typical scenario, in which one party refuses to execute the release, and the other party files a motion to enforce the settlement agreement. The instant case is atypical. Here, Ms. Coulter has refused to execute the release, yet she is the party who sought to enforce the settlement agreement. She would have this court effectively enforce the financial terms of the settlement agreement, exclusive of the release; that result is not what *Vela* intends.

¶ 19 *Vela* intends that, absent a showing of fraud, duress, undue influence or mistake, a court should enforce the *entire* settlement agreement. It does not support the proposition that a court should carve out and enforce only the financial terms agreeable to a party refusing to sign a release. Had Carewell been the party to file the motion to enforce the settlement agreement, we perceive no reason why, in accordance with *Vela,* the trial court would not have sustained the motion. Thus, it logically follows that this court must affirm the district court's order, effectively ruling that Ms. Coulter cannot obtain settlement proceeds without executing the release.

¶ 20 As did the plaintiff in *Vela,* Ms. Coulter signed the mediation agreement evidencing her intent to enter into a binding contract. Although she argues that the release was not negotiated, there is evidence in the

record upon which the trial court could have concluded that she had notice that the release would be forthcoming. For example, a letter dated August 31, 1999, which was sent by Carewell's attorney to Ms. Coulter's attorney, contains the following language:

> I really do not understand [Ms. Coulter's] current position that she should not have to sign the Settlement Agreement/Release since it was not presented to her at the mediation; I am sure you will recall that I agreed to quickly prepare a Dismissal with Prejudice at your request following the mediation, but that I specifically stated that I would not have time to prepare a Settlement Agreement/Release at that time, but would forward that to you for you [sic] review. This was acceptable to you at the time, and frankly is consistent with the way that I have always prepared settlement documents.

Additionally, there is the affidavit of the mediator attesting that it is his general practice to inform parties that a release will be forthcoming. Although the mediator did not *specifically* state that he informed Ms. Coulter about the release, this evidence, combined with the letter from Carewell's attorney, provides a sufficient basis upon which the trial court could have concluded that Carewell did indeed inform Ms. Coulter's attorney about the release.

¶ 21 Moreover, other jurisdictions have held that a release need not be negotiated during mediation. For example, in *Harris v. Ray Johnson Constr. Co.*, 139 N.C.App. 827, 534 S.E.2d 653 (2000), the court confronted a situation similar to the one presented here. The plaintiff, whose attorney had entered into an oral agreement with the defendants, argued that she was not bound by the agreement because the general release form was not negotiated as a part of the offer of settlement.

¶ 22 The court held that the attorney's acceptance "necessarily contained the implied promise to execute some instrument terminating the controversy as to that settling defendant, namely, the stipulation to dismiss the case with prejudice and release of claims form." *Id.* at 655. The court further stated, "after the initial offer and acceptance, there remained nothing to negotiate in terms of the forms necessary to effectuate the settlement." *Id.* at 655–56.

¶ 23 Plaintiffs in *Lampe v. O'Toole*, 292 Ill.App.3d 144, 226 Ill.Dec. 320, 685 N.E.2d 423 (1997), also refused to sign a release after having entered an oral settlement agreement. They argued that, because they refused to sign the release, they never agreed on terms and thus, there had been no meeting of the minds. The court held, "[a] proper oral settlement agreement is enforceable and the lack of a written release does not control unless the parties intended to make a release a condition precedent to the agreement." *Id.* at 424. Once there had been an offer, acceptance and a meeting of the minds on terms, the contract was complete. *Id.* The court also pointed out that the release did not materially alter the terms of the settlement agreement; it merely reflected the agreement which the parties had already reached. *Id.* at 425.

¶ 24 A California court, in *Gallo v. Getz*, 205 Cal.App.3d 329, 252 Cal.Rptr. 193, 196 (1988), made the following statement concerning settlement agreements involving insurance companies:

> It is customary for insurers after the negotiation of settlements to forward drafts in payment and releases for execution together as a package to plaintiffs' attorneys. If plaintiffs' attorneys and their clients were allowed to take the money, refuse to execute the release, and later renege on the agreement to settle, no settlement would ever be final. If on the other hand, it became necessary for the insurer in practice to obtain a release signed by the plaintiff before issuance of a draft in payment, many settlements would not be reached as immediate payment is often the most important factor in reaching settlement in personal injury cases.

¶ 25 We conclude that releases such as the one prepared by Carewell are common in settlement negotiations. Ms. Coulter has not argued that the release materially altered the financial terms agreed upon in the mediation agreement, and it is clear that she would rather settle the matter without having the

case proceed to trial. Therefore, her refusal to execute the release is unreasonable.

¶ 26 We further conclude that the signed mediation agreement evidences a meeting of the minds as to financial terms, and, Ms. Coulter's acceptance of Carewell's offer contained an implied promise to execute the release. Therefore, the trial court did not abuse its discretion in overruling the motion to reconsider or in ordering Ms. Coulter to execute the dismissal *and* release or proceed to trial.

■ ¶ 27 In her remaining proposition of error, Ms. Coulter states that the trial court erred in overruling her motion to enforce the settlement agreement. She makes several arguments in support of this proposition, some of which were not raised to the trial court in her motion to reconsider. This court will not consider for the first time those arguments which were not presented to the trial court. *See Gabler v. Holder and Smith, Inc.*, 2000 OK CIV APP 107, ¶ 6, 11 P.3d 1269, 1273.[5]

¶ 28 We will address the arguments which were made to the trial court; however, because Ms. Coulter filed the motion to reconsider, we are limited in our review, and will address her arguments only insofar as they establish an abuse of discretion on the part of the trial court.

¶ 29 First, although Ms. Coulter has not alleged fraud or coercion, she argues that in denying her motion to enforce the settlement agreement, the court effectively set aside the mediation agreement, and that, pursuant to *Vela*, the court was required to first make a finding of fraud, duress, undue influence, or mistake. As we have previously discussed, Ms. Coulter is the one who attempted to have the trial court enforce the financial terms of the settlement agreement, exclusive of the release. The trial court's action in denying the motion to enforce the agreement

did not set aside the mediation agreement. Rather, the court concluded that the release was a part of the agreement, and it simply refused to partially enforce the agreement. Thus, the trial court did not abuse its discretion, but acted consistently with the law.

¶ 30 Next, Ms. Coulter invokes the parol evidence rule, arguing that the trial court erred in relying on facts outside the four corners of the mediation agreement as a basis for its decision to deny her motion to enforce the agreement. Specifically, she argues that the court failed to make a finding that the mediation agreement was ambiguous before considering the affidavit of the mediator.

■ ¶ 31 Oklahoma law provides that "when the language of a written contract is complete, unambiguous and free from uncertainty as to the parties' intentions, parole [sic] evidence of prior representations, contemporaneous agreements or understandings tending to change, contradict, or enlarge the plain terms of the written contract are inadmissible." *First Nat'l Bank and Trust Co. of Vinita v. Kissee*, 1993 OK 96, ¶ 13, 859 P.2d 502, 506–07. However, this language clearly states that the parol evidence rule bars extrinsic evidence only when the contract is *complete.*

■ ¶ 32 Here, it is apparent that the mediation agreement, although intended to be a binding contract, was not intended to be a *complete* agreement, as it did not address the execution of specific documents necessary to actually effectuate the intent of the parties. The parties had agreed that Carewell would forward the full settlement agreement to Ms. Coulter for her signature. Moreover, releases are often executed after the mediation agreement has been signed. Thus, we cannot say the court's reliance on the affidavit was an abuse of discretion.

---

5. There are three arguments presented in Ms. Coulter's brief-in-chief which were not presented to the court in the motion to reconsider. First, she argues that the trial court failed to give proper deference to the probate court as to the propriety of the probate proceedings. Next, she argues that the statute of limitations has run on all potential claims. This argument is an attempt to show that Carewell's insistence upon the signed release is unreasonable. Finally, she argues that a dismissal with prejudice is a bar to further litigation, and, therefore, the release is not necessary. Were we to consider these arguments, we would find them unpersuasive.

## CONCLUSION

¶ 33 The trial court did not abuse its discretion in overruling Ms. Coulter's motion to reconsider. There was a meeting of the minds concerning the mediation agreement, and implicit in Ms. Coulter's acceptance of Carewell's offer of settlement was an obligation to execute the release. Her request that the court enforce the financial terms of the settlement agreement exclusive of the release is unreasonable and contrary to what the law intends.

¶ 34 AFFIRMED.

¶ 35 REIF, V.C.J., and GOODMAN, P.J., concur.